## Borderland Coal Co. v. Kerns.

(Decided October 24, 1916.)

### Appeal from Pike Circuit Court.

1. Appeal and Error—Law of Case.—The rulings and decisions of this court upon a prior appeal, where the evidence is substantially the same as on the preceding trial, and the instructions upon that trial were substantially as those given on the last trial, the opinion in the prior appeal becomes and is the law of the case as to the subsequent trial, and this results, although it may be found that the first opinion was erroneous.

2. Evidence—Declarations of Foreman as to Accident to Servant.—Evidence of declarations and statements of the superintendent or foreman of the defendant having the work in charge as relating to facts existing prior to an accident to a servant, and which declarations and statements are made prior to such accident, are admissible to prove the knowledge of the principal of the existence of such facts as fully as if such statements and declarations had been made by the principal himself.

3. Trial—Affidavits of Jurors to Impeach Verdict.—Affidavits or testimony of a juror as to what occurred in the jury room while the verdict was being considered are not admissible to impeach the verdict, except to show that it was arrived at by lot, and this rule goes to the extent of excluding such testimony in order to establish a previously existing bias on the part of some of the jurors.

J. J. MOORE, JAMES P. WOODS and S. D. STOKES for appellant.

D. M. HOWERTON, ROSCOE VANOVER and E. J. PICKELSIMER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellee was an employe of the appellant in its coal mine in Pike County, Kentucky. A part of his duties was to assist the track-layer having charge of the temporary tracks in the mine, and if any obstruction should appear upon any of the tracks to assist in clearing it off, at any rate to help extricate the rails of the track from beneath such obstruction. Upon the occasion of the accident to him, resulting in the injuries for which he sues, a considerable quantity of slate and rock had fallen upon a portion of one of the tracks and practically covered up four rails, leaving at one end of the rails something like four or five feet of them uncovered by the debris. It was a part of the duty of appellee to in some manner draw these rails from under this debris, and if it could not otherwise be done, to procure the

motor car used in the mines, with the aid of which the work might be done. This was accomplished by having a chain attached to the motor, and also to the end of the rail, and with the power of the motor the rail would be drawn. Two rails had been drawn on the occasion, in this manner, but the third one attempted to be drawn had no hole through the end of it by means of which the chain could be attached to it, as this portion of that rail had been previously broken off. It is shown that under such circumstances the only practical way to fasten the chain to the rail which was intended to be drawn was by wrapping the chain around the rail, placing one link thereof into another one, and running a bolt through the first link. It was fastened in this manner, and an effort made to draw the rail, but the chain slipped off of the end; it was then fastened in the same manner, but several inches further back from the end than it had been placed in the first effort, and when the motor was started, the rail, which seems to have been slightly curved, was suddenly jerked from under the pile of slate and rock forming the obstruction, and the front end of it came in contact with a cross tie on the track, and with such force that it caused the rail to flop around with great force and strike the plaintiff in the face, inflicting upon him the injuries of which he complains. He filed this suit, alleging that the defendant was negligent in employing, and continuing in its employ, the motorman who had the car in charge at the time of the injury, when it either had knowledge, or by the exercise of ordinary care could have had knowledge, that the motorman was incompetent for the purpose for which he was employed, and the work in which he was engaged. It is charged that "said motorman so carelessly and negligently, violently and recklessly operated said motor that it was caused to give a quick and sudden jerk and was caused to violently and suddenly jump forward with great and unusual force and velocity," which caused the end of the rail to strike the cross tie and it flopped around, as described.

The answer is in three paragraphs, the first of which is a traverse of the petition; the second is a plea of contributory negligence, and the third relies upon the assumption of the risk by the plaintiff. A reply completed the issues, and upon trial there was a verdict in favor of the plaintiff in the sum of $7,000.00, upon which

judgment was rendered, but this was reversed on appeal to this court, the opinion being reported in 165 Ky., page 487, in which opinion the facts are stated with greater detail. A reading of that opinion will show that the reversal was had exclusively upon the point that the trial court committed error in admitting evidence before the jury of admissions made by the foreman of the defendant, whose duty it was to employ, retain or discharge the motorman with reference to the incompetency, recklessness and carelessness of the motorman, whose name was Edwards, and which admissions were made by the foreman after the accident. This ruling, by this court, was because of the familiar and well recognized rule that such statements, unless a part of the *res gestae* when made by a servant, are inadmissible as against the principal, and the error in admitting evidence contrary to the rule is such a one as justifies a reversal. The authorities are fully stated in that opinion.

Upon a second trial the plaintiff recovered judgment for $5,000.00, from which this appeal is prosecuted. The evidence heard upon the two trials is almost literally the same. By far the major portion of it was by depositions, which were read upon both trials, with the exception that in those taken for the plaintiff the objectionable testimony pointed out by the first opinion was not read to the jury on the second trial. What has been said with reference to the identity of the testimony heard upon the two trials may, with equal correctness, be said with reference to the instructions given to the jury upon the two trials; while those given at the last trial may not be in the exact verbiage of those given upon the first trial so as to entitle the former to be called the verbatim of the latter, they are, to all intents and purposes, the same.

The grounds urged for a reversal are, first, that the evidence is insufficient to show that the motorman was incompetent, and therefore a peremptory instruction to find for the defendant should have been given. Second, that the same error was committed upon the last trial for which the first judgment was reversed. Third, that the court erred in refusing to give to the jury instruction B offered by the defendant; and fourth, that the court erred in refusing to grant it a new trial, because, it is insisted, that the jury, while considering its verdict

in the jury room, was made acquainted with the fact that the plaintiff recovered a verdict for $7,000.00 on the first trial, through a statement to that effect made by one of the jurors, the defendant being informed of what thus took place in the jury room by other jurors whose affidavits were filed upon the hearing of the motion for a new trial.

Considering these objections in the order mentioned, it is sufficient to say that the evidence as to the incompetency of the motorman is the same as it was upon the former trial. A peremptory instruction was insisted upon at that trial, and the refusal to give it was assigned and argued as error upon the first appeal. The contention was denied, and, under repeated rulings of this court, it cannot be considered on this appeal. The question is now *res adjudicata* between the parties: Osborne v. Louisville Railway Co., 171 Ky. 348; Wheeler v. C., N. O. & T. P. R. Co., idem. 436, and authorities therein referred to.

As to the second point urged for a reversal, it is insisted that one witness, after testifying to having heard the mine foreman speak of the recklessness and carelessness of the motorman, stating that it was before the accident, on cross-examination he was made to say that he was not positive as to whether it was before or after the accident. The tenor of this witness' testimony is to the effect that the statements of the foreman, which he details, were made before the time of the accident, and it cannot be said that because he was not perfectly positive as to the precise time of it that it should be presumed that this testimony related to a time subsequent to the accident. An error relied on for the reversal of a judgment must be clear and positive, and not exist in mere probabilities. In view of the fact that all of the testimony on this point, with the possible exception of the doubt of this witness expressed on cross-examination, after his previous positive statement made in his examination in chief is the same on both trials, we are not prepared to say that the admission of his testimony constitutes such an error as would justify a reversal, and we, therefore, find no merit in this contention.

The third ground, that of failing to give to the jury instruction B offered by the defendant, is insisted on because it is claimed that the testimony of the witnesses introduced by the plaintiff that they had heard the su-

perintendent and foreman of defendant's mine, before the accident, make admissions to the effect that he knew of the incompetency of the motorman, should be admitted only for the purpose of establishing the defendant's *knowledge* of such incompetency, and not for the purpose of establishing the motorman's incompetency. By the instruction offered the jury were told that such testimony could not be considered for any other purpose except to establish the defendant's *knowledge* of the motorman's incompetency, and it is insisted that a statement in the former opinion confines this evidence to that effect alone. The statement in the former opinion, which it is claimed gives such restrictive effect to this testimony, is:

"Upon the issues as to whether or not the appellant knew, or by the exercise of ordinary care could have known of the incompetency and unfitness of the motorman to operate and handle its motor in performing the duties incumbent upon the motorman, in the operation of its mines, and the negligence of the appellant in employing and retaining in its employ such an incompetent servant, the declarations of the mine superintendent, who had the authority to employ and discharge the motorman, tending to show his incompetence and unfitness, and which were made before the time upon which appellant sustained his injuries, are competent evidence to prove the appellant's knowledge of the incompetence and unfitness of the motorman."

We do not so narrowly construe the language of this court as do attorneys for appellant. Immediately following the statement above, is this further one: "The reason why the declarations of the mine superintendent, regarding the incompetency of the motorman, made before the injuries were received, were competent as evidence against appellant, is that he was the agent of appellant."

The court in making the first statement above was not endeavoring to confine the relevancy of the testimony now being considered to the issue of the *knowledge* of the incompetency on the part of the master, but further on, and in the statement last quoted, it is shown that the declarations of the superintendent may be admitted upon the issue as to the incompetency of the negligent servant, and they are not confined to a mere knowledge, on the part of the master, of such incompetency.

This must necessarily be true as a result of the law of agency, and especially as to corporation principals. The latter class of principals have no individuality. They must act entirely through agents, who stand in the relation to them of vice principals, and statements and declarations against the interest of the principal made by such vice principals are, in law, the statements and declarations of the principal himself. So that when such declarations are to the effect that a particular servant is incompetent, this is proof, not only of the incompetency, but also of the principal's knowledge of such incompetency. The offered instruction, therefore, seeking to confine the effect of the testimony, as insisted upon, was properly refused.

As to the fourth ground, it is shown by the affidavits of two jurors that one member of the jury, after the case had been submitted to it, and when the jury was in the room considering the case, stated that on the former trial the plaintiff had been given a verdict for $7,000.00, and the argument is made that if it had been known at the time of the acceptance of the jury that any of them had this information such ones so informed would have been excused; that this would have furnished a challenge for cause, and that, inasmuch as the juror withheld such knowledge on his *voir dire* examination, he was incompetent to sit as a juror, and that the affidavit of a fellow juror is competent to show such disqualification. It is conceded, by an unbroken line of opinions from this court, that a verdict cannot be impeached through the testimony of jurors as to what occurred in the jury room, except to show that the verdict was made by lot; but it is insisted that the testimony of a juror might be received for the purpose of showing that a fellow juror was an incompetent one, and that such facts might be shown in this manner as would disclose that some of the jury were biased toward one of the parties at the time they were accepted on the panel. A great many cases, including many in Kentucky, hold that such information as the juror in the instant case disclosed, would have justified his being excused from a place on the jury, but this is not the question here. The rule not permitting verdicts to be impeached by the testimony of a member of the jury as to what occurred while the verdict was being considered, with the exception stated, is one designed to protect the sacredness of the jury system, as

well as the stability of verdicts, and to give some assurance of a final determination of litigation. It belongs to that class of subject to which the door should be closed against all inquiries, upon the theory that an adherence to it would serve the cause of justice better than would a different rule allowing the deliberations of the jury to be investigated. It is for these considerations that the holding of this court has been so constant and uniform upon the subject. We are thoroughly convinced that the affidavit of the juror in this case, if admitted for the purpose insisted on, would constitute a departure from the rule, which we are neither inclined to nor justified in doing. Moreover, there is nothing in the affidavit to show that the juror who made the statement in the jury room concerning the former verdict possessed that information at the time he was accepted as a juror, and we are not authorized to presume against the verdict that he did possess the information at that time. Neither is it made to appear that the jury, upon the examination touching their qualifications, were asked anything about their knowledge as to the result of the former trial; but, however, this may be, it does not necessarily follow that if the members of the jury knew of the former verdict that such information influenced them in making their verdict on the second trial. An honest juror may be aware of the result of a former trial, but if he is ignorant of the facts touching the merits of the case, he would not be disqualified from returning a fair and impartial verdict upon the testimony that he might hear on the trial in which he serves as a juror. Indeed his oath confines him, in making his verdict, to the consideration of the testimony which may be introduced on that trial, and we are not to presume either that the juror is dishonest or that he will take any extraneous fact into consideration. Before we would be authorized to grant a new trial it should be made to appear, by competent evidence, that the matters complained of so operated on the mind of the juror as to influence his verdict; so that, in any view of the case, we are convinced that the appellant is not entitled to a new trial on this last ground urged.

There is no contention as to the size of the verdict, as the plaintiff lost an eye, sustained a broken nose, a broken jaw, and was otherwise seriously and permanently injured.

Wherefore the judgment is affirmed.