## Stearns Coal and Lumber Company v. Ball, et al.

(Decided March 1, 1927.)

### Appeal from McCreary Circuit Court.

Master and Servant—Death of Company's Police Officer, Also County Patrolman, in Quelling Disturbance of Assemblage, in Company's Hall, Held in "Course of Employment"—"Accident" (Workmen's Compensation Act, Section 3; Ky. Stats., Sections 3780-3786).—Where company employee was charged with duty of making arrests for violations of law on company property, death, in attempting to arrest persons who were shooting on highway, and disturbing people in assembly hall adjacent, held to have occurred by accident arising out of and in "course of employment," under Workmen's Compensation Act (Ky. Stats., section 4882), where assembly hall and all other buildings in community belonged to company, though deceased was also county patrolman appointed under Ky. Stats., sections 3780-3786, authorized to preserve peace and arrest law violators, disturbing assemblage being in violation of law under section 1267.

WILLIAM WADDLE and A. E. DENTON for appellant.

H. M. CLINE for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Appellee, Mattie Ball, was awarded compensation by the Kentucky Workmen's Compensation Board at the rate of $12.00 per week for a period of 335 weeks, with interest on past due payments, and burial expenses not to exceed $75.00, in an application for compensation made by her on account of the death of her husband found by the board to have occurred by accident arising out of and in the course of his employment with appellant, upon evi-

dence that both the employer and employee had elected to operate under the provisions of the Kentucky Workmen's Compensation law. Appellant prosecuted an appeal from the award of the board to the McCreary circuit court, and, upon trial there, the judgment of the compensation board was affirmed. This appeal is prosecuted from that judgment.

A brief statement of the facts appearing herein is necessary to a proper determination of the questions presented by appellant. It is a corporation owning large areas of coal and timber lands in McCreary county in this state and is engaged in mining and marketing coal and in cutting, manufacturing and marketing its timber and timber products therefrom. Its chief place of business in this state is Stearns, in McCreary county, Kentucky, and at that place it operates a large industrial plant in connection with its mining and timber business. Though there is sufficient population at this place, consisting of its employees, no municipal organization has been effected, and appellant owns the town-site and all of the buildings therein which house its various industrial operations and its employees and their families. It appears that one of the public state highways runs through appellant's town-site. Appellee's intestate at the time of his death had been appointed and qualified as a county patrolman of McCreary county, under the provisions of chapter 95, Kentucky Statutes, and was receiving from the county a salary of $30.00 per month. He was living in the town of Stearns, Kentucky, and under employment from appellant was being paid $75.00 per month as salary; was carried regularly on its payroll and paid as its other employees were. There is no contention but that both he and appellant had elected to operate under the protection of the compensation act. Among other buildings in its town appellant had erected a public assembly hall where moving pictures appear to have been regularly shown. The night appellee's intestate met his death it appears that the American Legion was giving some sort of exhibition in that building, and as was customary appellee's intestate was present. After the performance had begun and while a large crowd of people were assembled a number of shots were fired outside the building to the disturbance of those present. Appellee's intestate, who was standing near the entrance to

the building, immediately left, and shortly afterwards other shots were fired. Considerable excitement arose among those assembled at the picture show house, and subsequent investigation disclosed that someone had shot and killed appellee's intestate a short distance from the picture show building, he being found lying near the public highway which runs through appellant's town.

Appellant insists that the record affords no evidence that it was any part of the duty of appellee's intestate under his employment from it to apprehend or arrest any persons for violations of the criminal laws of our state, and that in attempting to arrest the persons who, on this occasion, were guilty of discharging firearms on the public highway in front of the picture show building and in coming to his death while so doing appellee's intestate was not performing any duty arising out of and in the course of his employment, but was in the performance of the duty enjoined upon him as a peace officer under his appointment as county patrolman of McCreary county, and hence that the award of the board is without evidence to support it, and unlawful, and should be reversed.

The chief timekeeper employed by appellant corporation at Stearns, Kentucky, who testified that he kept the payrolls and records showing the payments to its various employees, testified as a witness for appellee upon the hearing of this proceeding before the compensation board, and, after testifying that Farris Ball, appellee's intestate, received a salary of $75.00 a month from appellant, testified further as follows:

"Q. What was he paid for? A. Special agent for the Stearns Coal & Lumber Company. Q. Special officer for them? A. Yes, sir. Q. How long did he perform those duties? A. I don't know. He was special agent when I come to Stearns. Q. How was this money paid him? A. Through the payroll like other employees. Q. All on the Stearns Coal & Lumber Company's payroll? A. $25.00 of that was charged back to the K. & T. Q. But paid on Stearns Coal Company's list? A. Yes, sir. Q. Do you know what his duties were as an officer? A. Special agent. Q. What does that mean? A. He looked after the company's property and their in-

terest in general. Q. Make arrests? A. Yes, sir. Q. Did you ever see him about the picture show? A. Yes, sir. Q. Pretty regularly? A. I didn't attend it regularly but when I was there Mr. Ball was there. Q. What was he doing? A. Usually inside the picture show. The last time I remember seeing him he was quieting some kids down in front. Q. He did quiet the kids and keep down trouble? A. Yes, sir. Q. Who was that show operated by? A. Stearns Coal & Lumber Company. Q. Do they own the building? A. Yes, sir. Q. And the picture machine? A. Yes, sir. Q. And pay the man for operating it? A. Yes, sir. Q. Do you know what kind of show was on the night he was killed? A. No, sir. Q. Did he have any other duties to perform except to arrest men who were cutting up in the picture show? A. Well, if they had been cutting up any other place on their property. I do not know whether he was just special agent or county patrolman, that is not for me to decide. Q. It was his duty to arrest people on the Stearns property? A. If they had been violating the law. Q. On Stearns property anywhere? A. Yes, to look after their interest."

Upon being questioned by a member of the board he stated that Ball was employed solely as a police officer around the camp by the Stearns Coal & Lumber Company, and that it was his duty to arrest anyone violating the law on the property of the Stearns Coal & Lumber Company.

This evidence seems sufficient to clearly establish that appellee's intestate was employed by appellant solely because under his authority as a county patrolman he was authorized to make arrests and to conserve the peace as other peace officers and in order that it might obtain for its special benefit those services. It would seem to be going far afield to say that because the offenders, who fired the shots while appellee's intestate was within the picture show building and who thereby violated the law and made it appellee's duty to apprehend and arrest them, were on the public highway that the offense so committed was not on its property; and that because of that fact, coupled with the fact that appellee's intestate was a county patrolman, it must be

held that, in attempting to arrest the offenders and while so doing coming to his death, appellee's intestate was discharging no duty owing by him to appellant under his employment from it but was acting solely as a county patrolman and public peace officer. The protection of itself, its property and its employees from the depredations of those violating the law appears to have been exactly the purpose of appellant's contract of employment with appellee's intestate. The offenders in this instance not only were guilty of discharging firearms on a public highway but they also were guilty under the provisions of section 1267, Kentucky Statutes, of disturbing the assemblage of people, consisting largely of appellant's employees and their families, then and there met in appellant's building, who had met and were engaged in a lawful purpose. Such appears to have been the exact service for it and its employees which appellant contracted with appellee's intestate to render.

Almost exactly the same state of case as here was before the California Supreme Court, in Engels Copper Mining Company v. Industrial Accident Commission, 185 Pac. 182, 8 A. L. R. 187. A deputy sheriff there had been employed by the mining company, as the opinion states, "to keep down disorders from drunkenness, to settle disturbances among the men and to do the work of a regular peace officer in keeping order." In the opinion it was said:

"It is insisted, however, that in so doing he was, 'of course,' acting in an official capacity as deputy sheriff. This raises the only serious question presented by the petition. Where a private company or individual employs a watchman or special officer, and in making its selection deliberately chooses an officer of the law, in order to take advantage of his authority, as did petitioner in the instant case, and where such officer performs acts advantageous to and expressly or impliedly directed by the employer, which happen at the same time to be acts which it would be his official duty to perform, is such an employee acting in the course of employment within the meaning of the Workmen's Compensation Act?"

After placing its construction upon particular provisions of the California Workmen's Compensation stat-

ute, defining employees and certain exceptions noted in the statute, the court concluded:

"So read, its clear effect is to provide that, where a deputy performs acts which, while official in their nature, are advantageous to the employer and directed by him, not incidentally merely, but as part of the duties prescribed and contemplated in the contract of employment, then such deputy is acting in the course of his private employment within the meaning of the provisions of the Workmen's Compensation Act.

"Upon this view of the statute, petitioner cannot escape liability to compensate the widow for the death of Franklin H. Smith, on the plea that in performing the duties incident to his employment he was also fulfilling a duty to the county."

The annotation appended to the case above in 8 A. L. R. discloses that there is a dearth of authority upon the question here presented, and cites only one other case as bearing on the question whether those engaged in industrial operations under the protection of the workmen's compensation law, who employ peace officers to protect their property and employees, may be required to pay compensation for the injury or death of such employee where it occurs in the performance of duties enjoined upon him both by the terms of his employment and under his duty as a public peace officer. The Industrial Commission of New York held that injury or death so occasioned should be held to be due to accident arising out of and in the course of his employment and awarded compensation.

Appellee's intestate, under his appointment as a county patrolman for McCreary county, was invested with authority to preserve the peace and to apprehend and arrest all persons violating the criminal laws of this commonwealth. For the protection of its property and its employees appellant employed him at a salary of $75.00 per month to keep the peace in its mining town. A lawful assembly of its employees assembled within its building, was disturbed by persons discharging firearms immediately in front of the building. In the performance of the exact duties for which appellant employed and paid him appellee's intestate sought to apprehend and bring to justice those guilty of that violation of law. In

doing so he was killed. The court encounters no difficulty in concluding that his death occurred by accident arising out of and in the course of his employment within the provisions of section 4882, Kentucky Statutes, subsection 4, of our compensation law, and that the compensation board properly awarded appellee compensation therefor.

The judgment, therefore, will be affirmed.

Whole court sitting.