# Wilson Berger Coal Company v. Metcalf.

(Decided October 15, 1929.)

A. G. PATTERSON for appellant.

E. L. MORGAN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Wilson Berger Coal Company and its employee, Moss Metcalf, had both accepted the provisions of the Workmen's Compensation Act. On May 22, 1927, Metcalf was shot and killed. His wife, Samantha Metcalf, applied to the Workmen's Compensation Board for compensation. Her claim was rejected by the board, but allowed on appeal by the Harlan circuit court. From the judgment allowing the claim the coal company appeals.

The evidence discloses that Metcalf, who was also a deputy sheriff, was employed by appellant as peace officer, and that the homicide occurred under the following circumstances: On Sunday afternoon, May 22, 1927, Chester Reed, Joe Eversole, John Eversole, and Jim Tolliver came to Pennington's store in an automobile. While there they began to abuse and threaten Dock Napier and Ed Brock, two of appellant's employees. During the disturbance, Metcalf approached from appellant's premises, which lie across the river, and only 15 or 20 yards away. After some conversation, one of the men shot and killed Metcalf.

On the question of Metcalf's duties, R. C. Scott, appellant's secretary and treasurer, testified in substance as follows: He employed Metcalf and prescribed his duties. Metcalf was watchman and peace officer, and was directed to maintain order and act as peace officer

around the company's camps. It was deemed necessary to have a peace officer clothed with authority of law in order that he might more efficiently perform his duties. The maintenance of peace and good order in and around the camp was necessary to the production of coal. If the company's men were down there quarrelling with those men it was his duty, if he knew of it, to stop it. That was what he was employed for. Of his own knowledge Metcalf patrolled that place (the place of the trouble) almost every day. He and the company knew this, and never gave him any orders to stop it.

Several times Metcalf went off the company's property in order to destroy the headquarters of liquor vendors, who were selling the employees liquor. To maintain order and keep peace in and around the camps was what he was employed for. It was his duty to maintain order in all cases wherein the company was affected. He would say that, when those men met up there 30 yards off the company's premises and began to beat up two of their employees, it was within the scope of his employment to break it up. Metcalf was over there every day, and the company knew of it. He considered it to be to the interest of the company at its door to maintain order and peace. It was natural for him to go over there on that property. If there was a disturbance over there, it would naturally disturb the camp. The company encouraged Metcalf if he came in contact with bootlegging to break it up before it entered the camp. Ed Brock and Dock Napier worked for the company off and on, but he could not say whether they were working then or not.

On his cross-examination Scott testified as follows: On the day that Metcalf was killed he did not give him any orders to go across the river to Pennington's store and make any arrests, or attempt to preserve peace on that side of the river. He knew nothing about it until after the shooting occurred. Under the verbal contract with Metcalf, appellant was paying him $150 for policing and patrolling its property. Metcalf being a deputy sheriff, and responsible to the sheriff for his actions, he permitted him from time to time to assist the sheriff in his duties other than in the camp. The road leading from the end of the bridge up Martin's Fork and past Pennington's store was a public highway. He made no specific contract or agreement with Metcalf to patrol that public road as part of his police duty.

In denying compensation, the Workmen's Compensation Board made the following finding of facts:

"Moss Metcalf, deceased, was employed by the defendant, Wilson Berger Coal Company, as a peace officer. He was also a deputy sheriff and as such had the power to arrest, either on or off the property of the defendant.

"On May 22, 1927, the deceased left the property of the defendant to quell some trouble, and in so doing and while off the property of the defendant, he was killed."

On this finding of facts it made the following ruling of law:

"An accident occurring to a deputy sheriff when off the property of an employer for whom he is working to preserve the peace on said property does not arise out of and is not in the course of employment."

Appellant takes the position that the board's finding that the death of Metcalf did not arise out of or in the course of his employment was a finding of fact, and there being some evidence to support such finding, it cannot be disturbed on appeal. Such, however, is not the case. On the contrary the case is one where there is no dispute as to the facts, and only a question of law is presented. The case is therefore reviewable by the courts. Consolidated Coal Co. v. Ratliff, 217 Ky. 103, 288 S. W. 1057. Though it be true that Mr. Scott testified that he gave Metcalf no orders to go across the river to Pennington's store and make arrests, or attempt to preserve the peace, and that he had no specific contract or agreement with Metcalf that Metcalf was to patrol the public road as part of his police duty, his evidence defining Metcalf's duties must not be overlooked. He repeatedly stated that Metcalf was directed to maintain order and act as peace officer, not only in the camps, but around the camps, and that was exactly what he was employed for. He was also employed to keep down dissension in and around the camps. He further stated that, if the company's men were down there (Pennington's store) quarrelling with those men (referring to the men who had the difficulty with Metcalf), it was Metcalf's duty, if he knew of it, to stop it if he could, and that, if some of the employees were being beaten up, it was within the

scope of his duty and employment to break it up. He added that it was Metcalf's duty to maintain order in all cases wherein the company was affected, and, if there was a disturbance over there (the place of the homicide), it would naturally disturb the camp.

It is apparent from this evidence that the conclusion of the board that Metcalf while off the property of appellant was not acting in the course of employment cannot be sustained. On the contrary, it clearly appears that it was his duty to keep order in and around the camp, and to quell disturbances before they reached the camp. Being engaged in this duty when he was shot, it necessarily follows that the accident was one which arose out of and in the course of his employment, and that the circuit court did not err in so holding. Stearns Coal & Lumber Co. v. Ball, 218 Ky. 607, 291 S. W. 1013.

Judgment affirmed.