## Blue Diamond Coal Company v. Sizemore et al.

(Decided May 1, 1934.)

WILLIAM SAMPSON for appellant.

G. G. RAWLINGS for appellees.

Opinion of the Court by Stanley, Commissioner—
Affirming.

Owen Sizemore was a deputy sheriff of Harlan county, employed by the appellant to preserve order at its Chevrolet mine. During the night of December 25, 1931, having been informed by a superior that propaganda of the Communists or an objectionable labor union was being distributed in the mining camp, he went to investigate it. He was shot and killed while undertaking to evict one of those trespassers from the company's property. The Workmen's Compensation Board allowed appropriate compensation to his widow and dependent children. The award was confirmed by the circuit court, and the company brings an appeal.

The case is distinguishable from Black Mountain Corporation v. Pace, 252 Ky. 550, 67 S. W. (2d) 673, and others where the peace officer was not discharging duties in connection with his special employment by the coal company when killed. While Sizemore was subject to the orders of the sheriff and sometimes performed official duties outside of the company's premises, when he met his death he was protecting the company's special interests and was acting within the scope of his employment by the company and his death arose out of it. Stearns Coal & Lbr. Co. v. Ball, 218 Ky. 607, 291 S. W.

1013; Wilson Berger Coal Co. v. Metcalf, 231 Ky. 932, 21 S. W. (2d) 112.

It is argued that there was no competent evidence to support the Board's finding of fact that Sizemore had elected to work under the Compensation Act by signing the agreement required by section 4957, Kentucky Statutes; hence that the case is brought within those opinions in which it is declared that an award must be based upon competent evidence of probative value. Broadway & Fourth Avenue Realty Company v. Metcalfe, 230 Ky. 800, 20 S. W. (2d) 988. The weight of the evidence is that Sizemore had not signed a card containing the acceptance, which loose system was used by the company instead of a permanent register. If in fact he had not, it appears that his failure was because the company intended that he should not. To sustain the defense that he had not signed such acceptance, it was shown to be the policy of the company not to have its employees who were exclusively peace officers, and its doctors and teachers, do so although they could if they requested it. This man was employed at daily wages to perform hazardous duties. His authority as a public peace officer was doubtless given him for the company's special benefit. He was fully entitled to the protection of the Compensation Act (Ky. Stats., sec. 4880 et seq.), and the policy of the company was in conflict with the spirit and the terms of the law.

But the case must be determined by what was actually done, and not upon the company's policy. We, therefore, look to the evidence tending to support the claim that the deceased employee had signed the acceptance. The widow, an adult daughter, and three other ladies testified that at the home before the burial Hansard, the company's chief clerk, who was in charge of the compensation records and who looked after having the employees sign the acceptances, stated, in answer to an inquiry by the widow, that Sizemore was "protected by compensation," and also had a small insurance policy providing a burial fund. Later when Mrs. Sizemore went to the office to get her husband's last pay, she talked with Hansard about her affairs, and he insisted that Sizemore was protected by the compensation and that she need not worry as it would be impossible "to beat me out of it." She is corroborated by her son. A few days after this when she was again at the office, she had a conversation with Yates, the pay-

roll clerk, and asked him to show her the register. Yates told her that they used the card system. and his card was on file and he would show it to her. He was gone three or four minutes and returned and said: "Mr. Hansard must have removed it; it isn't in the file; you will have to ask him for it." A daughter corroborated this testimony. In Hansard's absence Yates would sign up the employees and had access to the records. Ed Rose, who was then a deputy constable, testified that in the previous February he had a warrant to serve and got Sizemore as a fellow officer to go with him. They met up with Housley, the company's superintendent, who asked Sizemore if he had signed for compensation (he had been but recently employed), and when told that he had not Housley said, "You had better sign," and they went to the office and Housley brought a card which Sizemore then signed and Housley took back.

Housley testified that his orders as superintendent were that nobody should be employed without signing an acceptance. He was not asked as to his knowledge of whether Sizemore had in fact signed such a card, but contradicted Rose as to having had him do so at the time and place he stated. The night watchman and perhaps some other peace officers had signed the acceptances, but it was explained that they had other duties to perform which gave them a different status. The conversations and admissions of Hansard and Yates related were denied and their version corroborated, and there was other proof tending to show Sizemore had not signed the acceptance. The witness Rose was shown to have been convicted of a felony—manslaughter—but had been given a new trial. Of course, this only affected his credibility.

The weak quality of the evidence tending to support the Board's finding is recognized. But its very weakness may be attributed to the omission of the company to keep a record more permanent than loose cards, so easily lost accidentally or removed wrongfully. A permanent record in the form of a substantial book is contemplated by the law if it does not actually require it. Sections 4957, 4958, Kentucky Statutes. The company created the condition which may have prevented the plaintiffs from establishing with certainty their right to the compensation.

We quite agree with the attitude of the Board as

expressed in the able opinion of its member, the Honorable Ben B. Petrie, thus:

"It must be remembered that the records of elections by employees to work under the provisions of the Act, being kept by the employer, are at all times under the employer's control and management. Under such circumstances, it is not uncommon to find an employee or his dependents at a great disadvantage in substantially proving acceptance of the Act by the employee in cases where that fact is disputed. The employee in this case met his death in the faithful performance of his duty; he left as survivors, a helpless widow and three dependent infant children. If they are denied the benefits of this Act, the very humane purpose for which it was designed will have been frustrated. Common honesty and a keen sense of righteousness demand that their claim be liberally dealt with. While it may be said the claimants have not met the burden imposed upon them by a great bulk of substantive evidence, we believe it logical to conclude from such evidence as has been produced, together with the proven circumstances that the claimant widow, for herself and for the use and benefit of the infant dependents, should be awarded compensation in accordance with provisions of the Act. Justice impels us to so find."

We conclude, therefore, that there is competent evidence to sustain the finding of fact by the Board.

It is contended exceptions should have been sustained to the testimony of Mrs. Sizemore upon the ground that she testified in chief after she and her co-plaintiffs had taken the deposition of Housley, and that she was incompetent under section 606, Civil Code of Practice, prohibiting one from giving evidence in his own behalf concerning transactions with a deceased person. Housley's deposition was not material, and everything Mrs. Sizemore testified to was related by other witnesses whose right to testify is not questioned. We have often recognized the spirit of the terms of the Compensation Act providing for a summary and simple procedure and declared that the Board, in the reception of evidence, is not to be held to the same technicalities as regularly constituted courts. Sections 4930, 4933, Kentucky Statutes; Valentine v. Weaver, 191 Ky. 40,

228 S. W. 1036; Rex Coal Company v. Campbell, 213 Ky. 636, 281 S. W. 1039. If the technical objection should be held to be well taken, it cannot be perceived how the error affected the substantial rights of the defendant. So it must be disregarded as immaterial. Section 134, Civil Code of Practice; New Trosper Coal Company v. Maryland Casualty Company, 205 Ky. 464, 266 S. W. 32. The other objection is without merit. The widow did not undertake to testify as to any transaction with her deceased husband. Her evidence related to her own conversations with representatives of the defendant after his death.

The evidence of the admissions of Hansard and Yates is assailed as incompetent upon the ground that their statements were not res gestæ or binding upon the company. It is readily conceded that the statements do not come within the class of statements held admissible as res gestæ of a particular transaction. We are of opinion, however, as was the Board, that it was competent to prove them as admissions of agents made in the course of and in connection with the performance of their authorized duties. The corporation could speak only through an agent, and these men were in charge of its records, upon which its liability in the particular instance rested. They were stating what those records showed and not relating any past act done or omitted by them or by the company. Such evidence is as competent as would be an admission against interest by an individual party to a lawsuit under the circumstances. Borderland Coal Company v. Kerns, 171 Ky. 626, 188 S. W. 783; Ehremann v. Old F. G. Walker Distillery Company, 197 Ky. 244, 246 S. W. 789; Kentucky Coal Lands Company v. J. D. Hughes Lumber Company, 200 Ky. 798, 255 S. W. 689; Vincennes Bridge Company v. Poulos, 234 Ky. 243, 27 S. W. (2d) 952.

The judgment is affirmed.