(No. 25546.—

RosE Scott, Plaintiff in Error, *vs*. The Industrial Commission *et al.*—(The Northwestern Barb Wire Company, Defendant in Error.)

*Opinion filed June 14, 1940—Rehearing denied October 2, 1940.*

CLAYTON R. PENSE, and ROBERT W. BESSE, (KENNARD J. BESSE, of counsel,) for plaintiff in error.

B. S. QUIGLEY, for defendant in error.

Mr. JUSTICE GUNN delivered the opinion of the court:

Howard Scott was employed by defendant in error the Northwestern Barb Wire Company, hereafter called respondent. A strike was in progress at that plant. The union men belonging to the American Federation of Labor remained at work; the men belonging to a rival union struck. Scott belonged to the American Federation of Labor. Considerable violence occurred during this strike. Many persons were injured, including the sheriff. The employer agreed to protect the employees who remained at work, and undertook to provide a safe means of transportation in and out of the plant. Respondent's plant was in Sterling, Illinois. Scott resided on the opposite side of the Rock river in Rock Falls. In the river was located what was known as Lawrence Park Island. On this island respondent had poles carrying high power lines from the Rock Falls side of the river. There were two bridges crossing the river, but one of them was partly out of use because of a fallen span, the remaining part reaching to Lawrence Park Island. Respondent had called upon the sheriff's office for protection, and deputies, at the request of respondent, were stationed on Lawrence Park Island to protect the high voltage wires, because the day before armed men were seen on the island.

On March 1, 1938, Scott was driven from his home in an automobile to the island, and from the island he got into a motor boat owned by him and proceeded to cross the remaining part of the river to the wire plant. He worked

from 3:00 P. M. to 11:00 P. M. on that day. During the day he was asked by the foreman of another department in the plant if he would take two other employees home with him in the boat, to which he agreed. After quitting work, Scott and a friend started for the boat and the foreman of the two additional men directed them to go with Scott. They all left the wire plant in the motor boat for the landing place on Lawrence Park Island. The deputy sheriffs and other officers who had been placed upon the island at the request of the superintendent of the company, threw a flashlight beam on the boat as it approached the shore. In the darkness, by mutual mistake, a fight took place in which Scott was killed. The deputy sheriff believed the men in the boat to be strikers who would do violence to company property upon the island, and the men in the boat believed the deputies to be strikers who would do violence to them. Scott and his friend were assured by the assistant superintendent of the plant that the men would have protection when they remained to work after the strike started.

The deceased was married to plaintiff in error, Rose Scott, who at the time of her marriage had two minor children by a first husband, and Scott had one child by a previous marriage. Mrs. Scott's children were living at the home of Scott and were supported by him, and the child of the deceased resided in Washington.

The sole question raised in this case is whether, under the circumstances, Scott was killed by an accidental injury arising out of his employment, and in the course thereof.

The facts in this case are practically undisputed. The arbitrator and the Industrial Commission found against the plaintiff in error and the circuit court of Whiteside county approved the latter's finding. The issue whether the deceased received injuries which arose out of and in the course of his employment becomes a matter of law where the facts are stipulated or not in dispute. (*Scholl* v. *In-*

*dustrial Com.* 366 Ill. 588; *Ervin* v. *Industrial Com.* 364 id. 56.) The words "in the course of employment" refer to the time, place and circumstances under which the accident occurs. (*Scholl* v. *Industrial Com. supra; Mueller Construction Co.* v. *Industrial Board,* 283 Ill. 148; *Arquin* v. *Industrial Com.* 349 id. 220.) We have frequently held there are occasions when recovery of compensation is allowed for injuries received at a distance from the place where the workman is employed where it is shown that at the time and place of the injury the employee was doing some work connected with or incidental to his employment. (*Scholl* v. *Industrial Com. supra; Porter Co.* v. *Industrial Com.* 301 Ill. 76; *Irwin-Neisler & Co.* v. *Industrial Com.* 346 id. 89; *Porter* v. *Industrial Com.* 352 id. 392.) No fixed rule can be established to determine exactly when an injury arises in the course of employment. We have, however, held that an accident must have had its origin in some risk connected with or incidental to employment so that there was some causal connection between the employment and the injury. (*Scholl* v. *Industrial Com. supra; Taylor Coal Co.* v. *Industrial Com.* 301 Ill. 548; *Clark* v. *Industrial Com.* 356 id. 641.) It has also been held that when a strike is in progress an injury received by assault, in protecting the employer's property, is compensable. (*Baum* v. *Industrial Com.* 288 Ill. 516.) The courts of other States have held that injuries received by an employee by other striking employees or where caused by disputes arising between union and non-union employees, are a risk incident to the employment. *Gregory* v. *Industrial Com.* 129 Ohio St. 365, 195 N. E. 699; *Blue Diamond Coal Co.* v. *Sizemore,* 254 Ky. 102, 71 S. W. (2d) 11; *Wilson Berger Coal Co.* v. *Metcalf,* 21 S. W. (2d) (Ky.) 112; *Ledoux* v. *Fleming,* 188 La. 52, 175 So. 747; *Thomas* v. *Kaysing Iron Works Co.* 54 S. W. (2d) (Mo.) 763; *Patterson* v. *Thompson, Inc.* 169 Atl. (N. J.) 338; *Texas Employers Ins. Ass'n* v. *Sparrow,* 109 S. W. (2d) (Tex.) 1137; *Bedwell* v. *Dixie Bee Coal Corp.* 192 N. E. 723.

In the case before us, the employer undertook to protect his employees from violence from the strikers and transported employees from and to their homes in armed trucks. It extended its sphere of control from its factory to at least a part of the highways and to Lawrence Park Island upon which it had essential property, protected by armed guards. It not only ratified the action of Scott in crossing the river in his motor boat but also requested the use of this conveyance to transport two other employees, upon the assumption that it was safer than traveling in the trucks. The present situation comes clearly within our definition of the words "in the course of employment" as the time, place and circumstances of injury all occurred at a place subject to the special danger from strikers, and following the cessation of work upon premises controlled by the employer at that particular time.

On the proposition of Scott being killed from injuries arising out of the employment it has been said: "If the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. * * * The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." (*Mazursky* v. *Industrial Com.* 364 Ill. 445.) In many cases we have, in substance, held that an injury, to come within the Workmen's Compensation act need not be an anticipated one nor, in general, need it be peculiar to the particular employment in which one is engaged at the particular time. (*Central Illinois Public Service Co.* v. *Industrial Com.* 291 Ill. 256; *Combes* v. *Industrial Com.* 352 id. 399.) The facts in this

case do not bring it within the rule of *Borgeson* v. *Industrial Com.* 368 Ill. 188, as in that case the employee was killed through a hazard shared by every one traveling the streets and not a hazard of his employment. In *Scholl* v. *Industrial Com, supra,* where the employee was killed, while coming to work, by a man who had been discharged, we said: "The point is not so much where or when the shooting actually occurred as it is that, at that particular time Scholl, by reason of his employment, and in performance of a duty arising therefrom, was subjected to an unforeseen risk which brought about his death."

In this case, by reason of the employment, Scott was in a place near-by the employer's factory, which the employer had undertaken to control, and became subject to the added risk because of the fact of employment. With industrial violence occurring in the neighborhood of the employer's plant there was a special hazard at that particular time, peculiar to the employees working on the premises and going to and from the immediate neighborhood of the premises. This hazard was not common to the public generally but an incident of the employment at that time. The fact that Scott was shot by persons employed by respondent, or at least placed upon the premises by respondent, only emphasizes that the fatality was an accident within the meaning of the Workmen's Compensation law. From facts which are either admitted or not in dispute, it is clear that Howard Scott was accidentally killed under circumstances which arose out of and in the course of his employment.

The order of the circuit court confirming the finding of the Industrial Commission is, therefore, reversed, and the cause is remanded, with directions to set aside the finding of the commission and to direct the entry of an award consistent with the views expressed herein.

*Reversed and remanded, with directions.*