THE VALIER COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOE BODRERO, Defendant in Error.)

*Opinion filed February 24, 1928.*

1. WORKMEN'S COMPENSATION—*technical rules of pleading not applicable to statement of claim.* While the statement of claim filed with the Industrial Commission and the findings of the commission in making the award must be consistent, the same particularity of pleading is not required in a claim before the Industrial Commission as is required in an action at law.

2. SAME—*what must be included in statement of claim.* The statement of claim for compensation should formally state the time, place, manner and character of the accident, so that the employer will be advised of the nature of the claim and can properly prepare his defense.

3. SAME—*statement of claim need not allege full extent of injury.* It is not necessary that the statement of claim state the amount of compensation claimed nor is it necessary for the claimant to state all of the deleterious effects arising out of the accident, as the claim is required to be made within such a short time after the accident that the full extent of the injury may not be then ascertainable.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. C. H. MILLER, Judge, presiding.

W. H. HART, W. W. HART, and M. M. HART, for plaintiff in error.

A. C. LEWIS, and ROY C. MARTIN, for defendant in error.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

By leave of this court plaintiff in error has sued out a writ of error to review a judgment of the circuit court of Franklin county confirming an award of the Industrial Commission in favor of defendant in error, Joe Bodrero.

It is contended by plaintiff in error that the award is contrary to the manifest weight of the evidence and that Bodrero was not totally and permanently injured as a result of the accident.

On January 7, 1925, Bodrero received an injury while working for the Valier Coal Company, and on May 14, 1925, filed an application for adjustment of claim with the Industrial Commission of Illinois. The application for adjustment of claim set forth, in substance, that the left eye of the claimant was injured from a cut under the eye received while placing tools out of the way from shots, and that coal fell, hitting him in the back, knocking him down and·pushing his face into the coal. The case was heard before an arbitrator of the Industrial Commission, at which time it was stipulated that both parties were on the date of the injury, January 7, 1925, operating under and subject to the provisions of the Workmen's Compensation act; that the relation of employer and employee existed; that the employee received an accidental injury which arose out of and in the course of his employment; that notice of the accident and claim for compensation were made as required by law; that the annual earnings of the employee were $1456 and the weekly wage $28, and the employee had three children under sixteen at the time of the injury; that first aid and medical services had been furnished by the employer, and that the sum of $111.71 has been paid on account of the injury, but plaintiff in error did not admit that Bodrero received an injury to either eye.

Bodrero testified before the arbitrator that he was injured on January 7, 1925, while working for the Valier Coal Company; that about half a ton of coal fell on his back and head, knocking him down on his face; that the left side of his nose and eye were injured and that he was also injured below the right eye; that dust and coal got into his eyes; that his eyes were normal in all respects before the injury; that he could read any kind of a newspaper

before the injury; that following the injury he was given treatment by the company, and was sent to Dr. Williams, at Centralia, Dr. Johnson, at Benton, and Dr. Roth, at Murphysboro, and that he went to Dr. Brandon, at Carbondale, of his own accord; that following the injury on January 7 he went back to work on January 26 and worked until about May 15, at which time he quit work because he couldn't see to work; that his eyes hurt him all the time and he was compelled to wear large colored glasses; that he could see very little light, and that following the injury he started losing sight right away, and the sight kept going a little at a time; that the injury also caused a dark-colored scar on the right side of his lower lid, a dark-colored scar below the right eye, and one near the corner of his left eye.

Jim Monge, a witness for the claimant, testified, in substance, that he had seen him read newspapers and letters before the date of the injury, as did also Fred Piscagire.

The claimant called two physicians to testify before the arbitrator, viz., Dr. W. A. Brandon, of Carbondale, and Dr. H. H. Turner, of Christopher. Dr. Brandon for the last few years has been specializing in treatment of the eyes but is also engaged as a general practitioner, and Dr. Turner is engaged in the general practice. Dr. Brandon made two examinations of the eyes of claimant, the first one on July 14, 1925, and the next on September 18, 1925, the latter examination being a few days before the hearing before the arbitrator. On the date of the examination on July 14 the vision in the right eye of claimant was 20/65 and the vision in the left eye was 20/200. On the date of the examination on September 18 the vision in the right eye was 20/100 and in the left eye was 20/200. On the date of the July examination he found a roughened area under the inner part of the left eye, and this, taken in connection with the scar over it, indicated an injury; that the roughened place in the bone, together with the throwing out of callus, indicated a possible fracture at that point. On the Septem-

ber examination there was a depressed area of the margin of the orbit in the lower part of the left orbit which was not present at the first examination, and this condition might indicate absorption. On the July examination he found a swollen nerve-head in both eyes. There was some hyperemic condition of some of the tissues, which condition was of minor importance, and also some constriction of the blood vessels of the eyes; that the swelling of the nerveheads interferes with the vision and is a sign of some abnormal and diseased condition. On the examination in September there was still some swelling of the nerve-heads but to a less marked extent than on the previous examination, and the constricted blood vessels and other tissues of the eyes were apparently normal; that by a vision of 20/100 he meant that the claimant saw at 20 feet what a normal eye would see at 100 feet, and by 20/200 he meant that the claimant saw at 20 feet what a normal eye would see at 200 feet; that a 20/200 vision is known as industrial blindness; that in his opinion the condition he found in the eyes of the claimant was permanent; that trauma could cause the condition in which he found the eyes of the claimant, and, basing his answer on a hypothetical question stating a history of the case, he gave as his opinion that the trauma might well be considered causative in this particular case. On cross-examination he stated that the vision he found on both examinations was based upon what claimant told him, and that the condition of the eyes could also be caused by toxemia, which means some poisonous condition, such as from alcohol, tobacco, lead, mercury or syphilis.

Dr. Turner testified for the claimant before the arbitrator, in substance, that he made a physical examination of the face of the claimant during May or June, 1925, and found the lower internal portion of the orbital process was quite roughened; that the roughening was immediately over the scar on his face, indicating a fracture of the bone; that he examined him later and the roughening had

become smaller and smoothed out, and he made no X-ray examinations.

For plaintiff in error Dr. G. W. Haan testified before the arbitrator that he was the local physician for the Valier Coal Company at Valier; that he first examined the claimant on January 9, 1925, two days after the injury, and found lacerations about the face, principally below the left eye and on the right side of the face, and numerous small abrasions on his forehead, nose and chin; that he made an examination of the eyes to determine if there were any foreign bodies present, and there were none; that there was no inflammation present in either eye, no scars on either eyeball, no evidence of hemorrhage in either eye, and nothing abnormal with the eyes.

Dr. Roth testified for plaintiff in error before the arbitrator, in substance, that he has been an eye specialist for thirteen years and that he first examined the claimant on July 17, 1925; that at that time the vision by the manifest test in the right eye was 20/100 minus one and the vision in the left eye was 20/200; that he found no pathology in the eyes, except the optic disc appeared to be blurred, and he found no cause at that time for any apparent loss of vision; that he could not make a retinoscopic test because claimant persisted in keeping his eyes closed tight. Dr. Roth next examined the claimant September 18, 1925, and at that time the vision in the left eye was 20/100; that he could not make a retinoscopic examination on account of his holding his lids closed; that the vision of the right eye was 20/70; that all structures of the eyes appeared normal, except the fundus was more hyperemic than normal; that the claimant was one of the worst patients he ever had for testing, because he wouldn't even open his eyes in the dark room; that he found no reason why the claimant had to keep his eyes shut, and found nothing on either examination of traumatic origin and found no cause for any loss of vision in either eye; that the vision improved at the second

examination over the first, indicating that if the claimant had any disease he was getting better; that he found no reason why the claimant could not read normally with each eye, and found no evidence of a swollen nerve-head in either eye; that he found no evidence of optic atrophy in either eye and no evidence of hemorrhage; that if the claimant could read ordinary print before the injury he found no reason why he could not do so now; that if he could use his eyes to work before the injury he found no reason why he could not use them to work now; that he attempted to make a retinoscopic examination, and stood forty inches from the patient and had the retinoscope placed with the light back of claimant's head and above, with no light shining in his eyes, and the claimant said the light bothered his eyes and kept them closed, but there was no light shining in his eyes, as all the light was back of claimant's head.

Thereafter, on October 17, 1925, the arbitrator made an award awarding the claimant compensation at the rate of $17 per week for a period of 250 weeks and thereafter a pension for life, payable at the rate of $28.33 per month, for the reason that the injury sustained caused industrial blindness, rendering the claimant wholly and permanently incapable of work, and finding that the sum of $111.71 has been paid on account of said injury. On November 5, 1925, plaintiff in error filed with the Industrial Commission a petition to review the decision of the arbitrator. Following the hearing before the arbitrator plaintiff in error sent the claimant to Dr. Francis Lane, of Chicago, for an examination of his eyes, and by agreement of the parties the evidence of Dr. Lane was taken at Chicago on June 26, 1926. Dr. Lane has been a physician for twenty-seven years and has been specializing in treatment of the eyes twenty-three years. He has been professor of pathology at the University of Illinois for five years, pathologist at the Eye and Ear Infirmary for twenty years, and chief oculist at the Illinois Central Hospital for eight years. He exam-

ined the eyes of the claimant at his office in Chicago on February 9, 1926, and made an examination for the vision of each separately, an examination for glasses and an examination of the interior of the eye. He testified the claimant admitted a vision of 20/200 in each eye separately and would not admit any improvement by the use of glasses; that the interior of the eye, so far as he could determine, showed no pathological condition,—at least nothing to account for such reduced vision; that he attempted to make a subjective test, with the result that he could get no cooperation or definite answers from the claimant; that he claimed he could not see objects of certain size; that in making the field of vision the ordinary field of vision is made with two or three millimeter objects, and he tried as high as 15, both as to color and form; that he made an X-ray to determine if there was a fracture of the skull, and the X-ray was negative, showing no fracture; that from the result of his attempt to examine the claimant he was unable to determine the nature and extent of disability on account of the absence of certain tests which were necessary to arrive at a definite diagnosis; that he could not make these tests for the reason he could not get answers from the claimant for certain important objective tests although the patient understood the questions put to him. On cross-examination Dr. Lane testified that the claimant gave him a history of one-half ton of coal falling on him and said he was unconscious for ten minutes following the injury; that such an accident, if it so happened, could cause diminished vision; that the nerve-heads were slightly congested but showed no definite lesions, and such congestion would not tend to diminish vision unless there was an inflammation, and he was unable to determine if there was inflammation; that he did not recall that the claimant's eyes were sensitive to light; that with a 20/200 vision he should have been able to see the objects with which the witness sought to test the field of vision; that these objects were ten inches from

him, were ten millimeters square, and were placed both in front and to the side of him; that the claimant claimed he couldn't see them, which would be out of proportion to his admitted vision of 20/200; that he was unable to discover any pathological condition that would account for a 20/200 vision; that the claimant acted like a blind man either from stimulation or hysteria; that if he has hysteria it would lower the vision, and hysteria could develop from the injury he claims to have received, but if he has any loss of vision due to hysteria the condition would not be permanent, and the prognosis would be good and he would recover his vision; that his condition might be due to malingering; that he made no test to determine whether or not the claimant had hysteria, as there was no definite test to make, but a neurologist might make such a test. Upon re-direct examination Dr. Lane testified that if the claimant had hysteria his vision would return as rapidly as it left, because it was not a pathological condition but a mental attitude, as he found nothing from the objective test to account for any loss of vision.

The case was heard on review before the Industrial Commission on September 15, 1926, and neither party introduced further evidence. On October 5, 1926, the commission affirmed the decision of the arbitrator, and on the 22d of August, 1927, the case came on for hearing in the circuit court of Franklin county on *certiorari,* and the court affirmed the decision of the Industrial Commission and quashed the writ of *certiorari.*

From the above statement of facts it is evident that the extent of Bodrero's injury was a controverted question of fact as to which the evidence was sharply conflicting. There is evidence tending to show that prior to the accident Bodrero's eyesight was good, and that his eyes troubled him continuously after the accident until he became industrially blind. No witness testified to any trouble with his eyes prior to the accident and no lay witness gave evidence tend-

ing to disprove the claimant's claim of industrial blindness. In view of this record we cannot say that the award is so manifestly contrary to the weight of the evidence as to be the result of passion, prejudice or a misconception of the case.

Plaintiff in error alleges that the award is at variance with the claim filed with the Industrial Commission, in that therein no claim was made of any injury to the right eye. In Bodrero's claim filed with the commission he alleged "that on the 7th day of January, 1925, Joe Bodrero was injured by reason of an accident arising out of and in the course of his employment by the above named Valier Coal Company." Later in the claim the following appears: "Nature of work upon which injured was engaged at the time of the accident and how caused: Loader; left eye injured from cut under eye while placing tools out of way from shots; coal fell, hitting him in back, knocking him down, pushing face into coal." He claimed therein "$17 per week complete and permanent disability, including pension provided for under paragraph (f) of section 5." While the statement of claim filed with the Industrial Commission and the findings of the commission in making the award must be consistent, the same particularity of pleading is not required in a claim before the Industrial Commission as is required in an action at law. The Workmen's Compensation act does not prescribe in specific terms any particular form of application for adjustment of claim. Section 16 states that the procedure before the commission shall be simple and informal. It is only essential to a proper statement of claim for compensation for the applicant to state formally the time, place, manner and character of the accident, so that the employer will be advised of the nature of the claim and can properly prepare his defense. (*Madison Coal Co.* v. *Industrial Com.* 320 Ill. 65.) It is not necessary that the statement of claim should state the amount of compensation claimed, nor is it necessary for the

claimant to state all of the deleterious effects arising out of the accident, as the claim is·required to be made within a short time after the accident, when it is frequently unknown as to what results will follow. The application in the instant case stated the time, place, manner and character of the accident, and in our opinion was sufficient to advise the employer of the nature of the claim so that he could properly prepare his defense.

The award not being subject to the objections made thereto by plaintiff in error, the judgment of the circuit court in confirming it is affirmed.          *Judgment affirmed.*