TIM PRYOR, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Pryor Foods, Inc., Appellee).

Fifth District (Industrial Commission Division)    No. 5—93—0498WC

Opinion filed September 19, 1994.

James F. Jarrett, of Schniederjon, Weber & Jarrett, of Effingham, for appellant.

Karen L. Kendall and Brad A. Elward, both of Heyl, Royster, Voelker & Allen, of Peoria, and John D. Flodstrom, of Urbana, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The employee, Tim Pryor (claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) for injuries sustained to his foot and back while allegedly employed by Pryor Foods, Inc. (employer). The arbitrator denied benefits, finding that the claimant was not involved in an accident that arose out of and in the course of his employment with the employer. The Commission affirmed and adopted the arbitrator's decision. The circuit court confirmed.

The claimant presents one issue on appeal: whether the Commission's decision that the claimant was not in the course of his employment is against the manifest weight of the evidence.

We affirm.

The claimant was employed as the treasurer and manager of operations for the employer. The employer was a corporation that owned two grocery stores and a farm. The president of the corporation was the claimant's father. The claimant worked full time and was in charge of a grocery store. He also picked up produce in St. Louis and handled the farming matters with the tenant farmer of the corporate farm. On September 3, 1989, the claimant's father wanted to go to the corporate farm and cut a tree that had fallen in the bean field.

With the father driving the employer's truck, the claimant and his father went to his father's personal farm first to check on some timber cutting. While on his father's farm, the claimant's father wanted a limb cut out of a tree that the claimant, his father, and the claimant's brother used to hunt deer. The claimant had never trimmed trees before, although he had cut small brush on the corporate farm. To the claimant's knowledge, out of the 50 employees

of the employer, no other employees ever cleared limbs for tree stands or cut brush on either farm. The claimant's father told the claimant to get into the tree. The claimant stood on his father's knee and was helped into the tree. The claimant was standing on a tree-stand platform while cutting the limb. After cutting all the way through the limb, the limb started to fall. Because neither the claimant nor his father knew where the limb was going to fall, his father yelled, "Jump!" The claimant threw the running chainsaw in one direction and jumped in the opposite direction. As a result of the fall, the claimant sustained injuries.

Under section 2 of the Act, an injury is compensable only if it arises out of and in the course of the employment. "The phrase 'in the course of' refers to the time, place, and circumstances under which the accident occurred." (*Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 44, 509 N.E.2d 1005.) "An injury is received in the course of employment where it occurs within a period of employment, at a place where the worker may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto." (*Scheffler Greenhouses, Inc. v. Industrial Comm'n* (1977), 66 Ill. 2d 361, 367, 362 N.E.2d 325.) An injury "arising out of" employment is one which has its origin in some risk so connected with, or incidental to, the employment as to create a causal connection between the employment and the injury. (*Orsini*, 117 Ill. 2d 38, 509 N.E.2d 1005.) An injury arises out of employment when the risk of injury is peculiar to the work or is a risk to which the employee is exposed to a greater degree than the general public by reason of his employment; if the injury results from a hazard to which the employee would have been equally exposed apart from the employment, then it did not arise out of it. *Orsini*, 117 Ill. 2d 38, 509 N.E.2d 1005.

Prior to 1963, the definition of "employee" as used in the Act excluded "any person who is not engaged in the usual course of the trade, business, profession or occupation of his employer." (Ill. Rev. Stat. 1961, ch. 48, par. 138.1(b)(2).) Under this definition then, a person who worked in the business of the employer and also did yard work at the boss' residence was engaged in work of a dual nature, and the work done that was not part of the employer's business was not covered under the Act. (See *Phillips v. Industrial Comm'n* (1945), 390 Ill. 335, 61 N.E.2d 681, *overruled by Harry Fleming Washer Service v. Industrial Comm'n* (1966), 36 Ill. 2d 272, 222 N.E.2d 490.) In 1963, the amended definition of "employee" under section 1 contained the statement, "but not including any person who is not engaged in the usual course of the trade, business, profession or occupation of

his employer unless he is so engaged at the lawful direction or instruction of his employer." The supreme court concluded that this added language gave the statute an effect directly opposed to the holding in *Phillips*, and *Phillips* was overruled. (*Harry Fleming Washer Service*, 36 Ill. 2d 272, 222 N.E.2d 490.) In 1975, the above language was removed, broadening the definition of employee. (79th Ill. Gen. Assem., House Proceedings, September 17, 1975, at 73 (statements of Representative Tuerk).) As such, there is no longer a *per se* requirement that an employee must either be engaged in the usual course of employment or be performing some other task at the direction or instruction of his employer in order for an injury to be compensable.

This is not to suggest, however, a completely open-ended standard. Rather, case law has carved out certain instances where an injury is compensable even though it occurred while the employee was not in the performance of the usual course of trade, business, profession, or occupation of his employer.

In *Fleming*, the claimant was employed at his employer's retail store. He was injured while cutting the lawn at his employer's residence, where he was assigned to do work. The supreme court noted that the "work being performed at the time of the injury was performed within the purposes for which [the claimant] was hired and was so enmeshed with the usual business of the employer that the injuries suffered [were] compensable." (*Fleming*, 36 Ill. 2d at 274-75.) In *Friend v. Industrial Comm'n* (1968), 40 Ill. 2d 79, 237 N.E.2d 491, a grain elevator employee was injured while cutting a tree on the employer's personal farm. The supreme court observed that the claimant had frequently been sent to do tasks on his employer's farm when the claimant was not busy at the grain elevator, and his compensation was always in one weekly check covering the work done at the elevator business and the farm. As a consequence, the court stated:

> "[The claimant's] injuries were sustained *** while he was engaged in work which his employer directed him to perform. Even aside from the force of the amendment, the circumstances of this case show that the work being performed at the time was so enmeshed with the usual business of the employer as to make the injuries compensable." *Friend*, 40 Ill. 2d at 81, 237 N.E.2d at 492.

Another situation where an injury is compensable is when the person in authority directs an employee to run a private errand or do some work outside the normal duties for the private benefit of the

employer or superior. (1A A. Larson, Workmen's Compensation § 27.41 (1992).) Further, a familial relationship does not necessarily make an order personal. See *Law Offices of Schooley v. Industrial Comm'n* (1987), 151 Ill. App. 3d 1069, 503 N.E.2d 1186 (father-son relationship did not affect the employer-employee status for purposes of compensation).

A third recognized theory occurs when an act is performed outside an employee's regular duties but is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered. (1A A. Larson, Workmen's Compensation § 27.00 (1992).) In *Miller v. Reynolds* (1990), 200 Ill. App. 3d 166, 558 N.E.2d 673, the plaintiff, a cook and housekeeper, heard animal noises above the ceiling and informed the employers. An animal control officer placed a raccoon trap on the roof, and the officer instructed the plaintiff and one of the defendants, Mrs. Reynolds, how to set and bait the trap. A raccoon was caught the next day and it was taken away. The plaintiff was injured when she fell off of the ladder after tossing some more food into the trap. The defendants denied that the plaintiff's job included the raccoon problem. The court, relying on Professor Larson, concluded that the plaintiff's injury was in the course of her employment as a matter of law.

The law on the manifest weight of the evidence is well established.

In *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, 1037, the court stated:

"It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

(See also *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221.) "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." (*Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108, 109.) It has been observed: " 'The manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of the evidence." [Citations.] In order for a

finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. [Citation.]' " (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 53, 426 N.E.2d 1276, quoting *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 499, 375 N.E.2d 553, 557.) Finally, " '[i]f the undisputed facts permit an inference either way *** then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review.' " *Morgan Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 92, 97, 324 N.E.2d 425, quoting *Greenberg v. Industrial Comm'n* (1961), 23 Ill. 2d 106, 108, 178 N.E.2d 646, 647.

In the case *sub judice*, the undisputed facts show that the claimant was not in the course of the usual trade or occupation of the employer at the time of his injury, and this situation does not fit into any of the aforementioned theories. The claimant's act of cutting the limb was not a duty so enmeshed in the claimant's regular duties. The claimant testified that he never cut limbs off of trees before either on his father's farm or on the corporate farm. In fact, he did not know of any employee that ever cut limbs on either farm.

Nor was the claimant performing a duty at the direction of the employer for the private benefit of the employer. In regards to the decision to cut the limb, the claimant testified that it was a joint decision. He testified as follows:

"MR. JARRETT [claimant's attorney]: So did you and your father go out to the corporate farm?

A. We started to go out there, and when we backed out of the driveway, we decided to—he wanted to go out to his farm and check on some timber cutting that he'd been doing with the State and—

* * *

Q. You went out—you were going out to the corporate farm, and then you decided to stop by his personal farm; is that correct?

A. Right."

From this testimony, it may be inferred that the claimant and his father were backing out of the driveway when they both decided to go to his father's farm first to cut the limb. Cutting this limb was to benefit the claimant, his father, and his brother when they all hunted deer.

Finally, cutting the limb did not advance the employer-corporation's interests. The claimant testified that the deer blind was to benefit himself, his brother, and his father. There is no evidence that the interest of Pryor Foods, Inc., was advanced by this task.

For all of these reasons, we conclude that the Commission's decision is not against the manifest weight of the evidence.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, SLATER, and RARICK, JJ., concur.