731 N.E.2d 795 (2000)
314 Ill. App.3d 149
247 Ill.Dec. 22
ILLINOIS INSTITUTE OF TECHNOLOGY RESEARCH INSTITUTE, Appellee and Cross-Appellant,
v.
The INDUSTRIAL COMMISSION et al. (Catherine Kaufman, Widow, Lester A. Bonaguro, Appellant and Cross-Appellee).
No. 1-99-1474 WC.
Appellate Court of Illinois, First District, Industrial Commission Division.
May 15, 2000.
Rehearing Denied June 26, 2000.
*797 John P. Scanlon; Martin J. Healy & Associates, Chicago, for Appellants.
Matthew B. Schiff, Bridget A. Neuson and Linda C. Kramer; Schiff & Hulbert, Chicago, for Appellees.
Justice RAKOWSKI delivered the opinion of the court:
Thomas Kaufman (decedent) was killed by a stray bullet while working for Illinois Institute of Technology Research Institute (employer). His widow, Catherine Kaufman (claimant), filed an application for adjustment *798 of claim for death benefits pursuant to the Workers' Compensation Act (the Act) (820 ILCS 305/1 et seq. (West 1998)). The arbitrator concluded that claimant failed to prove decedent's death arose out of his employment and denied benefits. The Industrial Commission (the Commission) affirmed but the circuit court reversed. On remand, the Commission followed the circuit court's decision and determined that claimant's decedent was subjected to a greater risk of injury than that to which the general public is exposed and, therefore, concluded that his death arose out of his employment. On administrative review, a different judge of the circuit court reversed, finding decedent was not subjected to an increased risk of injury. The principal question before this court is whether decedent was subjected to a greater risk of injury from stray bullets than that to which the general public is exposed. Because the building in which decedent worked bordered on a police district with a very high crime rate, the building was located directly across the street from a project where rival gangs were feuding, gunfire was an almost everyday occurrence, bullets had previously hit employer's building, and decedent sat in the lobby of the building fronted by floor-to-ceiling glass windows, we answer yes and, therefore, find decedent's death arose out of his employment. We also find that the arbitrator properly allowed claimant to correct her application for adjustment of claim under the doctrine of misnomer or, alternatively, properly allowed her to amend the application under the doctrine of relation back. Therefore, the Commission had jurisdiction to consider the cause. Finally, we conclude that the proper legal standard for assessing risk is to compare claimant's risk to that of the general public, not to other individuals in the vicinity or area. Based on the above, we reinstate the Commission's decision on remand dated June 2, 1998.

FACTS
Claimant's decedent, a security guard for employer, was killed on November 9, 1989, by a stray bullet fired from across the street from his place of employment. He worked inside the lobby at 10 West 35th Street, Chicago, fronted by floor-to-ceiling glass windows. He sat behind a desk and console approximately 20 feet from the windows where his torso and head were exposed. Decedent's duties included monitoring alarms in the building, manning the front desk, patrolling the empty office building, and safeguarding secret United States government documents. Decedent was not required to patrol outside the building and the building was not open to the public.
Across the street from employer's building, south of 35th Street, are the Stateway Gardens homes. Rival gang members had been attempting to take control of the building directly across from employer's building. As a result of this dispute, seven armed gang members began firing shots at a man in the playground. To avoid the gunfire, the man ran from the playground, toward employer's building. While running, he was struck by a bullet. He continued to run and when he was in front of employer's second revolving door, he fell to the ground. Apparently, his hand was on the door at the time he began to fall. He died shortly thereafter. One of the bullets fired by the gang pierced a window of employer's building, struck Thomas Kaufman, and killed him.
Detective Edward Winstead of the Chicago police department testified on behalf of claimant. He was assigned to Area One Violent Crimes and explained that Stateway Gardens is located in the second district of Area One, and employer's building is located in the twenty-first district. He stated that since the project building was being fought over, activity in the area had increased and gunshots were heard daily. Winstead had been called to the area on prior occasions for purse snatchings and robberies, but not for shootings. He stated the crime rate south of 35th Street *799 (project side) was very high, while the crime rate north of 35th Street (employer's side) was "pretty low."
Winstead investigated decedent's shooting. According to him, the bullet crossed the playground, the sidewalk on the south side of 35th Street, 35th Street, the sidewalk in front of employer's building, and then entered the window of employer's building. It traveled over 200 feet before striking decedent. Winstead further testified that anyone walking on the sidewalk on 35th Street, driving by in a car, waiting on the L platform, returning from the White Sox game, or visiting the day care center on the south side of the street, the McDonald's on 35th Street or the liquor store on State Street just south of 35th Street would have been in the path of the bullet. Further, any passing train would have been in its path.
Claimant also called Richard Hammer, decedent's co-employee. He had been a security guard for 17 years for employer. He testified he heard gunshots at least weekly. Further, he stated that sometimes he heard them daily. According to him, bullets had previously struck the upper floors of the building but none had entered the lobby. Hammer did not know how many bullets had hit the building nor how many he had found, stating he did not count them. When the gang first began shooting on the day of the incident, Hammer stated to decedent that "they were at it again." Hammer stated no murders had occurred in the building in the 17 years he had worked there.
Claimant filed her application for adjustment of claim as "Catherine Kaufman, on behalf of her husband Thomas Kaufman, deceased." At arbitration, employer orally asserted, for the first time, that the case was brought on behalf of a dead person (Thomas) and, therefore, the Commission lacked jurisdiction. Over employer's objection, claimant was allowed to amend the application to state "Catherine Kaufman, widow." The arbitrator found the amendment proper as did each of the subsequent tribunals.
Substantively, the arbitrator found that claimant failed to prove decedent's death arose out of his employment because she failed to "show that Decedent's employment increased his risk of being shot over that of other persons in the neighborhood." The Commission adopted and affirmed. The circuit court (Judge Bonaguro) reversed. Judge Bonaguro first determined that the Commission applied an incorrect legal standard, comparing decedent's risk to others in the neighborhood rather than the general public. He held that, for this reason alone, the Commission's decision had to be reversed. He then concluded, as a matter of law, that "there is no doubt that, by being at his post, decedent's risk of being shot was greater than that of the general public. Any finding to the contrary would, as a matter of law, be against the manifest weight of the evidence." The circuit court remanded for proceedings consistent with its order. We dismissed employer's appeal based on lack of jurisdiction for want of a final order because of the remand to the Commission. Kaufman v. Industrial Comm'n, No. 1-96-1774WC, 286 Ill.App.3d 1112, 237 Ill.Dec. 537, 709 N.E.2d 1006 (February 25, 1997) (unpublished order under Supreme Court Rule 23).
On remand, the Commission found that decedent was subjected to an increased risk and, therefore, his death arose out of his employment. On administrative review, however, the circuit court (Judge Lanigan) reversed. Judge Lanigan first concluded that the Commission did not lack jurisdiction based on a faulty application for adjustment of claim. She found that the relation back doctrine applied to cure any defect in claimant's application. She then found that employer had waived its statute of limitations defense for failure to properly raise it before the Commission, concluding that its mention in a footnote was insufficient. Substantively, Judge Lanigan found that the Commission, in its *800 original decision, applied the proper legal standard (vicinity) and that Judge Bonaguro applied an incorrect standard (general public). Further, she found that differing inferences could be drawn from the facts and, therefore, Judge Bonaguro erred in deciding the case as a matter of law. Finally, she concluded that the Commission's original decision was not against the manifest weight of the evidence, finding that the bullet that struck decedent could have struck anyone in its path and, thus, the general public in that vicinity was subject to the same risk.

ANALYSIS

I. JURISDICTION AND STATUTE OF LIMITATIONS
On appeal, employer contends the Commission lacked jurisdiction. Specifically, claimant's application named a dead person, who cannot be a party, and, therefore, the application was a nullity. Further, claimant failed to amend the application or file a claim on her own behalf within the applicable statute of limitations period. Thus, the application was barred. Employer also argues the relation back doctrine is not applicable to workers' compensation actions because the Act makes no such provision. Moreover, there is nothing to relate back to because claimant's original application was a nullity. Employer relies on Vaughn v. Speaker, 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885 (1988), and Knowles v. Mid-West Automation Systems, Inc., 211 Ill.App.3d 682, 156 Ill.Dec. 8, 570 N.E.2d 484 (1991).

A. Application of Code of Civil Procedure
Employer contends that the doctrine of misnomer embodied in section 2-401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-401 (West 1998)) and the doctrine of relation back embodied in section 2-616 (735 ILCS 5/2-616 (West 1998)) do not apply to workers' compensation proceedings because neither the Act nor Commission rules provide for such procedures.
The Code and supreme court rules generally do not apply to workers' compensation proceedings "in so far as or to the extent that the procedure is regulated by * * * the * * * [A]ct." Elles v. Industrial Comm'n, 375 Ill. 107, 113, 30 N.E.2d 615 (1940) (declining to read civil Rule 4 (setting forth summons return day) into workers' compensation proceedings because matter of when writs of certiorari and scire facias are returnable is regulated by Act). However, where the Act or Commission rules do not regulate a topic, civil provisions have been applied to workers' compensation actions. See Krantz v. Industrial Comm'n, 289 Ill.App.3d 447, 450, 452, 224 Ill.Dec. 479, 681 N.E.2d 1100 (1997) (holding that claimant must seek relief under Rule 137 (134 Ill.2d R. 137) against employer for employer's frivolous appeal because Commission had no power to make such an award since the Act contained no provision therefor); Blacke v. Industrial Comm'n, 268 Ill.App.3d 26, 29, 205 Ill.Dec. 807, 644 N.E.2d 23 (1994) (applying statute of limitations found in section 13-205 of the Code to section 19(g) of the Act; stating that in the absence of a legislative intent to the contrary, court will apply Code provision where it is deemed necessary to facilitate purpose of the Act); Bray v. Industrial Comm'n, 161 Ill.App.3d 87, 91-93, 112 Ill.Dec. 436, 513 N.E.2d 1045 (1987) (applying interest provision of Code to workers' compensation proceeding, relying on McMurray v. Peabody Coal Co., 281 Ill. 218, 118 N.E. 29 (1917) (interest provision applied because Act silent); also holding that civil provision applicable even though Act amended to address interest because provisions cover different types of awards). See also Mora v. Industrial Comm'n, 312 Ill.App.3d 266, 274-75, 244 Ill.Dec. 675, 726 N.E.2d 650 (2000) (applying Code and cases interpreting same, specifically section 2-616, to determine that amendment of application to name additional respondents after hearing *801 before arbitrator was improper because it worked a prejudicial affect upon substantive rights of respondents). But see Lawlyes v. Industrial Comm'n, 246 Ill.App.3d 226, 230, 185 Ill.Dec. 413, 614 N.E.2d 547 (1993) (declining to apply Rule 137 sanction to workers' compensation proceedings to assess penalties against claimant for frivolous appeal because section 19 provides for penalties in favor of claimant, not against; court found Act intentionally silent on issue).
In this case, neither the Act nor the Commission's rules address under what circumstances an application for adjustment of claim may be amended. While section 7020.20(e) does provide for amendment, it does not detail under what circumstances amendment may be had. 50 Ill. Admin. Code § 7020.20(e) (1999). It simply states that an application may be amended any time before a hearing on the merits of the claim. Nonetheless, the policy considerations underlying the Actproviding for summary and informal proceedings under which the legislature intended to avoid technical and cumbersome pleading rules to expedite matters (7 A. Larson & L. Larson, Larson's Workers' Compensation Law § 77A.10, at 15-1 to 15-3 (1999))would be facilitated by applying the misnomer and relation back provisions to the instant case. Claimant's error was a technicality and did not affect the substantive rights of employer. Further, there is no evidence the legislature sought to prohibit amendment of applications under such circumstances. We see no reason why such doctrines should not be applied in this case Accordingly, we reject employer's contention that the doctrine of misnomer embodied in section 2-401 and the doctrine of relation back embodied in section 2-616 do not apply to the instant case. 735 ILCS 5/2-401, 5/2-616 (West 1998).

B. Misnomer/Section 2-401
"Misnomer is a mistake in name or the provision of an incorrect name to the person in accusation or pleading. [Citation.] It means nothing more than that a party is styled in other than his or her own name." Bristow v. Westmore Builders Inc., 266 Ill.App.3d 257, 260, 203 Ill.Dec. 680, 640 N.E.2d 339 (1994).
Misnomer exists when actual notice of the suit is given to the real parties in interest but the complaint does not refer to a person by his or her correct name. Zito v. Gonzalez, 291 Ill.App.3d 389, 392-93, 225 Ill.Dec. 617, 683 N.E.2d 1280 (1997). Section 2-401(b) provides:
"Misnomer of a party is not a ground for dismissal but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires." 735 ILCS 5/2-401(b) (West 1998).
As the provision states, misnomer can be corrected at any time, even after the statute of limitations has run. Thompson v. Ware, 210 Ill.App.3d 16, 18, 154 Ill.Dec. 500, 568 N.E.2d 500 (1991); Athmer v. C.E.I. Equipment Co., 121 F.3d 294, 295-96 (7th Cir.1997).
Misnomer must be distinguished from mistaken identity. Where misnomer occurs (plaintiff sues the right party under the wrong name), plaintiff can simply correct the mistake pursuant to section 2-401. However, if mistaken identity occurs (plaintiff sues the wrong party), amendment must meet the requirements of the relation back provision, section 2-616. Estate of Henry v. Folk, 285 Ill.App.3d 262, 264, 220 Ill.Dec. 831, 674 N.E.2d 102 (1996); Borg v. Chicago Zoological Society, 256 Ill.App.3d 931, 934, 194 Ill.Dec. 809, 628 N.E.2d 306 (1993). See also Zito, 291 Ill.App.3d at 391-92, 225 Ill.Dec. 617, 683 N.E.2d 1280. The question of whether misnomer or mistaken identity is involved depends on the intent of the parties, including the plaintiff's subjective belief; however, plaintiff's belief is not necessarily controlling. Henry, 285 Ill.App.3d at 264, 220 Ill.Dec. 831, 674 N.E.2d 102.
*802 Although section 2-401 clearly relates to either party, misnomer generally occurs with, and the vast majority of cases involve, defendants who have been improperly named. See Bristow, 266 Ill.App.3d at 261, 203 Ill.Dec. 680, 640 N.E.2d 339. As Bristow stated, it is "relatively unusual" when plaintiff improperly identifies itself. 266 Ill.App.3d at 261, 203 Ill.Dec. 680, 640 N.E.2d 339. However, the following cases are instructive. In Bristow, plaintiff filed suit in the name of a corporation rather than as a sole proprietor. The court rejected defendant's contention that the complaint was a nullity because the corporation was a nonexistent legal entity. Rather, it concluded that the case involved misnomer. All parties were fully aware of the identities of the actual litigants, an actual plaintiff existed, defendant was aware of the actual plaintiff because it made certain demands upon it, and defendant suffered no prejudice. Bristow, 266 Ill.App.3d at 262, 203 Ill.Dec. 680, 640 N.E.2d 339. Similarly, in Sjostrom v. McMurray, 47 Ill.App.3d 1040, 6 Ill.Dec. 109, 362 N.E.2d 744 (1977), plaintiff filed suit in the name of a corporation rather than individually "doing business as." Again, the corporate entity was nonexistent. The court found this was a case of a misnamed plaintiff that was correctable under section 2-401. Sjostrom, 47 Ill. App.3d at 1043, 6 Ill.Dec. 109, 362 N.E.2d 744. In Calvert Distillers Co. v. Vesolowski, 14 Ill.App.3d 634, 303 N.E.2d 170 (1973), plaintiff filed suit in the name of an entity that was not a legal entity. The court allowed correction as misnomer, finding there was an actual plaintiff, all parties were fully aware of the identities of the actual litigants, and all parties were aware of the issue in question in the case. Calvert Distillers Co., 14 Ill.App.3d at 636, 303 N.E.2d 170. Finally, in Challenor v. Niles, 78 Ill. 78, 80, 1875, WL 8424 (1875), in a scire facias proceeding, the court stated that a writ issued in the name of the deceased was "irregular" but amendment was properly allowed to name the administrator of the estate of the deceased.
The instant case is akin to the above cases. The correct claimant is Catherine Kaufman as widow. The application, however, stated "Catherine Kaufman, on behalf of her husband, Thomas Kaufman, deceased." She named herself, the correct party, in the wrong capacity. She stated she was Thomas' wife and he was deceased. From this description, it is beyond question that she was Thomas' widow. To be sure, employer was aware of claimant's existence, her actual identity, and her capacity. Further, employer was fully aware of the nature of the suit. Employer knew from the application decedent was killed while working. Employer is presumed to be aware of the laws to which it is subject and, pursuant to section 8(b), Catherine possessed a claim for death benefits. 820 ILCS 305/8(b) (West 1998). We do not believe employer can reasonably argue it was not aware of the nature of the claim or that the true capacity of the claim was Catherine's claim for benefits as a result of her husband's death.
The cases relied upon by employer are distinguishable. In Vaughn v. Speaker, 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885 (1988), suit was filed against a deceased individual, not on behalf of one. In Knowles v. Mid-West Automation Systems, Inc., 211 Ill.App.3d 682, 156 Ill.Dec. 8, 570 N.E.2d 484 (1991), suit was filed in the name of the deceased employee only, without reference to another plaintiff or any other capacity.
Based on the foregoing, we conclude that this case involves misnomer and, accordingly, the arbitrator properly allowed claimant to correct the application at the time of arbitration pursuant to section 2-401.

C. Amendment/Section 2-616
Assuming, arguendo, that claimant's error was not misnomer, we nonetheless conclude that amendment would be proper under section 2-616, and claimant's amended application would relate back to the original application.
*803 Section 2-616 provides for amendment of complaints. In pertinent part, it states:
"The cause of action * * * set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted * * * in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery * * *, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action * * * set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended." 735 ILCS 5/2-616(b) (West 1998).
The purpose of this provision is to ensure fairness to the litigants rather than to unduly enhance technical rules of common law pleading. Halberstadt v. Harris Trust & Savings Bank, 55 Ill.2d 121, 124-25, 302 N.E.2d 64 (1973); Wilfong v. W.A. Schickedanz Agency, Inc., 85 Ill.App.3d 333, 339, 40 Ill.Dec. 625, 406 N.E.2d 828 (1980). The provision is to be liberally construed to allow a decision on the merits rather than dismissal on technicalities (Dever v. Simmons, 292 Ill.App.3d 70, 79, 226 Ill.Dec. 1, 684 N.E.2d 997 (1997)), where the "pleading defect * * * does not impair the defendants' ability to defend the claim asserted." Hardimon v. Carle Clinic Ass'n, 272 Ill.App.3d 117, 122, 208 Ill.Dec. 824, 650 N.E.2d 281 (1995). The decision to allow an amendment is within the sound discretion of the trial court and amendment should be allowed unless the opposing party would be prejudiced. Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc., 275 Ill.App.3d 452, 460, 211 Ill.Dec. 299, 654 N.E.2d 1109 (1995).
With regard to plaintiffs, relation back has been allowed where a suit was filed by an administrator on behalf of a deceased individual but the administrator had not yet been appointed or the appointment was somehow defective. See Hardimon, 272 Ill.App.3d 117, 208 Ill.Dec. 824, 650 N.E.2d 281; Marcus v. Art Nissen & Son, Inc., 224 Ill.App.3d 464, 466, 166 Ill.Dec. 736, 586 N.E.2d 694 (1991) (and cases cited therein). See also American Car & Foundry Co. v. Industrial Comm'n, 335 Ill. 322, 328-29, 167 N.E. 80 (1929) (arbitrator properly allowed amendment to petition filed in name of foreign beneficiaries by attorney even though there was no evidence attorney had authority from beneficiaries to represent them where authority was later given and was found to relate back to original filing).
The court in Marcus set forth persuasive reasons for allowing relation back in the instant case. First, it rejected the contention that naming a deceased individual is always a nullity.
"We have no quarrel with the proposition that a lawsuit must have a plaintiff and a defendant and that both must be in existence for the lawsuit to proceed. The sole question before us is whether the trial court should have allowed the filing and relation back of an amended complaint which would have substituted the administrator, a living person, as the party-plaintiff in this lawsuit. As previously discussed, nothing in the language of section 2-616 would prevent such a result. To the extent that the cases cited by the defendants contain language indicating that a complaint filed in the name of a deceased plaintiff is a nullity for purposes of applying the relation back doctrine, we disagree with those *804 cases." Marcus, 224 Ill.App.3d at 469, 166 Ill.Dec. 736, 586 N.E.2d 694.
Second, the Marcus court believed a valid distinction existed between naming a deceased individual as a defendant and naming a deceased individual as a plaintiff. Third, it stated that relation back and amendment are proper when the following elements are satisfied: "`the original complaint furnished to the defendant all the information necessary for him to prepare a defense to the claim subsequently asserted in the amended complaint.'" Marcus, 224 Ill.App.3d at 467, 166 Ill.Dec. 736, 586 N.E.2d 694, quoting Joyce v. Wilner, 156 Ill.App.3d 702, 706, 109 Ill.Dec. 108, 509 N.E.2d 769 (1987). Finally, Marcus noted that the decision in Vaughn v. Speaker, 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885 (1988), rested on the fact defendants lacked notice of the suit, which is an essential element in applying the relation back doctrine, prior to the running of the statute of limitations. Vaughn, however, did not base its holding on the proposition that complaints against deceased individuals are a nullity for purposes of the relation back doctrine.
In the instant case, employer clearly received notice of claimant's claim prior to the statute of limitations expiringthe application for adjustment of claimant was filed on September 10, 1992. The statute of limitations ran on November 19, 1992. Claimant's husband was dead and employer knew this. Again, employer is presumed to be aware of workers' compensation laws and to know claimant was seeking death benefits. Further, the date of the accident and how it occurred were all in the application and within employer's knowledge. Accordingly, employer had all the information necessary to apprise it of the nature of the claim, the bases for the claim, and to defend the claim.
Additionally, the Act itself does not prescribe the specific form an application for adjustment of claim must take. However, the requirements for an application are clearly less strict than those requirements for suits filed at law. See Valier Coal Co. v. Industrial Comm'n, 329 Ill. 139, 147, 160 N.E. 212 (1928) ("The Workmen's Compensation [A]ct does not prescribe in specific terms any particular form of application for adjustment of claim. * * * It is only essential to a proper statement of claim for compensation for the applicant to state formally the time, place, manner, and character of the accident, so that the employer will be advised of the nature of the claim and can properly prepare his defense"). Accord Corn Products Refining Co. v. Industrial Comm'n, 402 Ill. 250, 83 N.E.2d 732 (1949); Chicago Park District v. Industrial Comm'n, 372 Ill. 428, 24 N.E.2d 358 (1939); Lewis v. Industrial Comm'n, 357 Ill. 309, 192 N.E. 212 (1934). See also Matwiczuk v. American Car & Foundry Co., 189 Mich. 449, 451, 155 N.W. 412, 412 (1915) ("The essential function to be performed by the notice of the claim for injury under [the workers' compensation] law is to bring home to the employer, at some time within six months after the accident, knowledge of the fact that a claim for compensation therefor is being asserted"), quoted in American Car & Foundry Co., 335 Ill. at 328, 167 N.E. 80. Thus, workers' compensation proceedings are less formal than civil proceedings and amendments to applications are commonly allowed. See Caterpillar Tractor Co. v. Industrial Comm'n, 215 Ill.App.3d 229, 238-39, 158 Ill.Dec. 805, 574 N.E.2d 1198 (1991) (and cases cited therein). See generally 7 A. Larson & L. Larson, Larson's Workers' Compensation Law §§ 77A.00, 77A.10, 77A.41, 77A.42, 77A.43 (1999).
As noted above, defendant had all the information available to research, investigate, and defend the claim filed by claimant. Allowing claimant to amend her application did not alter the facts that formed the basis of her claim. Employer had notice of the claim and, in fact, had been defending it for several years. See Hardimon, 272 Ill.App.3d at 122, 208 Ill. Dec. 824, 650 N.E.2d 281. Accordingly, *805 the arbitrator properly allowed claimant to amend her application for adjustment of claim. Further, because the claim in the amended application grew out of the same transaction and occurrence as that presented in the original application, the amended application related back to the original. Thus, the statute of limitations period was not violated and the Commission had jurisdiction over the matter.

II. WAIVER OF STATUTE OF LIMITATIONS
Based on our resolution above, we need not address employer's argument that it did not waive the statute of limitations defense since it raised the issue before the Commission and circuit court by including it in a footnote in its response briefs.

III. LEGAL STANDARD FOR ASSESSING RISK
Both claimant and employer contest the proper legal standard for assessing the risk decedent was exposed to. Claimant contends the proper standard is the general public not the same area or vicinityin other words, claimant must be exposed to a risk to a greater degree than the general public. Employer contends the risk of exposure is compared to other individuals in the area. It relies on Brady v. Louis Ruffolo & Sons Construction Co., 143 Ill.2d 542, 161 Ill.Dec. 275, 578 N.E.2d 921 (1991). According to employer, the "general population of the City" makes no sense because it would lead to a per se rule of compensation for all employees in high crime areas.
Professor Larson states that the object of the comparison is "to isolate and identify the distinctive characteristics of [claimant's] employment." 1 A. Larson & L. Larson, Larson's Workers' Compensation Law § 5.04(2), at 5-18 (1999), cited in Caterpillar Tractor Co. v. Industrial Comm'n, 129 Ill.2d 52, 62, 133 Ill.Dec. 454, 541 N.E.2d 665 (1989). Accordingly, "the comparison should be made with a broad cross section of the public." 1 A. Larson & L. Larson, Larson's Workers' Compensation Law § 5.04(2), at 5-18 (1999), cited in Caterpillar Tractor Co., 129 Ill.2d at 62, 133 Ill.Dec. 454, 541 N.E.2d 665. Illinois cases cite to the general public, not to a locality, neighborhood, or area. See Brady, 143 Ill.2d 542, 161 Ill.Dec. 275, 578 N.E.2d 921; Caterpillar Tractor Co., 129 Ill.2d at 58-59, 133 Ill.Dec. 454, 541 N.E.2d 665; Campbell "66" Express, Inc. v. Industrial Comm'n, 83 Ill.2d 353, 355-57, 47 Ill.Dec. 730, 415 N.E.2d 1043 (1980); Eisenberg v. Industrial Comm'n, 65 Ill.2d 232, 234, 2 Ill.Dec. 366, 357 N.E.2d 533 (1976); American Freight Forwarding Corp. v. Industrial Comm'n, 31 Ill.2d 293, 295, 201 N.E.2d 399 (1964); Scott v. Industrial Comm'n, 374 Ill. 225, 230, 29 N.E.2d 93 (1940); Springfield School District No. 186 v. Industrial Comm'n, 293 Ill.App.3d 226, 229, 227 Ill.Dec. 260, 687 N.E.2d 334 (1997); Fligelman v. City of Chicago, 275 Ill.App.3d 1089, 1092, 1094, 212 Ill.Dec. 329, 657 N.E.2d 24 (1995); Metropolitan Water Reclamation District v. Industrial Comm'n, 272 Ill.App.3d 732, 736, 208 Ill. Dec. 977, 650 N.E.2d 671 (1995); Pryor v. Industrial Comm'n, 266 Ill.App.3d 497, 499, 203 Ill.Dec. 705, 640 N.E.2d 364 (1994); Kemp v. Industrial Comm'n, 264 Ill.App.3d 1108, 1109, 1111, 201 Ill.Dec. 805, 636 N.E.2d 1237 (1994); Cassens Transport Co. v. Industrial Comm'n, 262 Ill.App.3d 324, 331, 199 Ill.Dec. 353, 633 N.E.2d 1344 (1994); Heath v. Industrial Comm'n, 256 Ill.App.3d 1008, 1013, 1015, 194 Ill.Dec. 838, 628 N.E.2d 335 (1993); Hammel v. Industrial Comm'n, 253 Ill. App.3d 900, 902-03, 193 Ill.Dec. 201, 626 N.E.2d 234 (1993); Rush-Presbyterian-St. Luke's Medical Center v. Industrial Comm'n, 258 Ill.App.3d 768, 772, 197 Ill. Dec. 51, 630 N.E.2d 1175(1994); Komatsu Dresser Co. v. Industrial Comm'n, 235 Ill.App.3d 779, 787-88, 176 Ill.Dec. 641, 601 N.E.2d 1339 (1992); Best Foods v. Industrial Comm'n, 231 Ill.App.3d 1066, 1069, 173 Ill.Dec. 210, 596 N.E.2d 834 (1992); County of Cook v. Industrial Comm'n, 165 Ill.App.3d 1005, 1009-10, 117 Ill.Dec. 545, *806 520 N.E.2d 896 (1988); Holthaus v. Industrial Comm'n, 127 Ill.App.3d 732, 736-37, 82 Ill.Dec. 703, 469 N.E.2d 237 (1984). See also C.A. Dunham Co. v. Industrial Comm'n, 16 Ill.2d 102, 104-05, 156 N.E.2d 560 (1959) ("[w]hile it was originally stated that [the] risk [of injury] must be peculiar to the work, and not connected with the neighborhood, the concept was expanded so that even if the general public is also exposed to the risk, if the employee, by reason of his employment, is exposed to such risk to a greater degree, the accident is said to arise out of his employment").
While we note that at some point Brady made the statement that the risk claimant was subjected to was no greater "than that to which other persons along the same route were exposed to" (Brady, 143 Ill.2d at 551, 161 Ill.Dec. 275, 578 N.E.2d 921), when the Brady court set forth the standard of law it was required to apply, it stated employees must be exposed to a risk "beyond that to which the general public is exposed." (Emphasis added.) Brady, 143 Ill.2d at 548, 161 Ill.Dec. 275, 578 N.E.2d 921. By way of example, Professor Larson clearly illustrates this principal"[o]ne could with equal logic say that a person employed as a lion-tamer was exposed to no greater risk of attack by lions than anyone else who happened to be in the cage." 1 A. Larson & L. Larson, Larson's Workers' Compensation Law § 5.04(2), at 5-21 (1999).
Based on the foregoing, the clear rule in Illinois is that claimant's risk is to be compared to the general public.

IV. PROPRIETY OF ORIGINAL COMMISSION DECISION
In order for claimant to recover, she must demonstrate that decedent's injuries arose out of and in the course of his employment. "In the course of" refers to time, place, and circumstances of the injury. Orsini v. Industrial Comm'n, 117 Ill.2d 38, 44, 109 Ill.Dec. 166, 509 N.E.2d 1005 (1987). For an injury to arise out of the employment, "the risk of injury must be a risk peculiar to the work or a risk to which the employee is exposed to a greater degree than the general public by reason of his employment." (Emphasis added.) Orsini, 117 Ill.2d at 45, 109 Ill.Dec. 166, 509 N.E.2d 1005. See also Brady v. Louis Ruffolo & Sons Construction Co., 143 Ill.2d 542, 550, 161 Ill.Dec. 275, 578 N.E.2d 921 (1991); Illinois Bell Telephone Co. v. Industrial Comm'n, 131 Ill.2d 478, 483, 137 Ill.Dec. 658, 546 N.E.2d 603 (1989); Pryor v. Industrial Comm'n, 266 Ill. App.3d 497, 499, 203 Ill.Dec. 705, 640 N.E.2d 364 (1994). There is no dispute decedent was in the course of his employment at the time of his death. However, claimant must still demonstrate that decedent's death "had its origins in some risk incidental to the employment." Rush-Presbyterian-St. Luke's Medical Center v. Industrial Comm'n, 258 Ill.App.3d 768, 772, 197 Ill.Dec. 51, 630 N.E.2d 1175 (1994).
There are three categories of risk an employee may be exposed to: (1) risks distinctly associated with the employment; (2) risks personal to the employee; and (3) neutral risks which have no particular employment or personal characteristics. Employment risks include the obvious kinds of industrial injuries and occupational diseases and are universally compensated. Personal risks include nonoccupational diseases, injuries caused by personal infirmities such as a trick knee, and injuries caused by personal enemies and are generally noncompensable.[1] Neutral *807 risks include stray bullets, dog bites, lunatic attacks, lightning strikes, bombing, and hurricanes. Compensation for neutral risks depends upon whether claimant was exposed to a risk of injury to a extent greater than to which the general public is exposed.
Again, the risk of being struck by a stray bullet is a neutral risk or, more particularly, a street risk. 1 A. Larson & L. Larson, Larson's Workers' Compensation Law § 4.03, at 4-2, § 6.05, at 6-7 (1999). A street risk is any hazard or source of danger, including traffic perils, falls, dogs, and bullets, encountered on the street that is not distinctive to a particular employment or person. 1 A. Larson & L. Larson, Larson's Workers' Compensation Law ch. 6, at 6-1 to 6-9 (1999). The street risk rule has been extended to cover inside structures if it is a place where the source of the risk could be expected to exist. See C.A. Dunham Co. v. Industrial Comm'n, 16 Ill.2d 102, 156 N.E.2d 560 (1959) (business travelers's death in an explosion and crash of commercial plane).
Whether an injury caused by a neutral risk arises out of employment is dependent upon whether claimant was exposed to a risk to a greater degree than the general public. Brady, 143 Ill.2d 542, 161 Ill.Dec. 275, 578 N.E.2d 921. It is not enough that the employment placed claimant in a particular place at a particular time. This is known as positional risk and Illinois has expressly and repeatedly rejected this doctrine. Brady, 143 Ill.2d at 552, 161 Ill.Dec. 275, 578 N.E.2d 921; Campbell "66" Express, Inc. v. Industrial Comm'n, 83 Ill.2d 353, 355-56, 47 Ill.Dec. 730, 415 N.E.2d 1043 (1980); Springfield School District No. 186 v. Industrial Comm'n, 293 Ill.App.3d 226, 233, 227 Ill. Dec. 260, 687 N.E.2d 334 (1997) (Rakowski, J., dissenting); Fligelman v. City of Chicago, 275 Ill.App.3d 1089, 1094, 212 Ill.Dec. 329, 657 N.E.2d 24 (1995).
Several Illinois cases have addressed recovery for stray bullet strikes. In Scott v. Industrial Comm'n, 374 Ill. 225, 29 N.E.2d 93 (1940), claimant was accidentally shot by a police officer hired to protect employer's premises during a strike. Claimant's injuries were found to have arisen out of his employment because of the increased industrial violence, which created a hazard not common to the general public. Because "industrial violence [was] occurring in the neighborhood * * * there was a special hazard at that particular time, peculiar to the employees working on the premises * * *. This hazard was not common to the public generally * * *." Scott, 374 Ill. at 230, 29 N.E.2d 93.
Conversely, in Heath v. Industrial Comm'n, 256 Ill.App.3d 1008, 194 Ill.Dec. 838, 628 N.E.2d 335 (1993), plaintiff was a stock clerk who was shot by an unknown assailant after the store's closing. The Commission determined that the injuries did not arise out of claimant's employment. We affirmed, stating that the question was not whether the facts established that claimant's work environment increased his risk but whether this was the only reasonable inference. We found it was not. There was no evidence the store was located in a risky environment. There was no evidence that showed the neighborhood was dangerous or the location lent itself to criminal activity. There was also no evidence that, because the store was closed, there was an increased risk of attack. Finally, claimant could not identify the attacker. Although two other employees were in the store, neither was injured and no money or goods were taken. Thus, there was no evidence that the attack was work related as opposed to a personal dispute.
The focus then in the instant case is whether the conditions or environment of decedent's employment increased his risk of being struck by a stray bullet over that of the general public. Again, if the only basis for finding that decedent sustained injuries was the fact that his employment placed him in the position where he was struck by a bullet at that time ("but *808 for"), then the injuries would not arise out of his employment. This would be the classic positional risk situation. However, if the injury occurred not just because of where decedent was, at that particular time, but was coupled with some factor that increased the risk of being struck by a stray bullet, then the injury is said to arise out of his employment.
Claimant contends the facts are undisputed and the inferences to be made from the facts lead to only one conclusion: decedent was exposed to a risk greater than the general public. Employer contends, however, that virtually every fact is disputed. Moreover, it contends that different inferences can be drawn from the facts. Therefore, employer contends the Commission's original decision is not against the manifest weight of the evidence, stating that Brady controls.
The question of whether an injury arises out of employment is generally a question of fact for the Commission and we will not disturb its determination unless it is against the manifest weight of the evidence. "'The manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of the evidence." [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. [Citation.]'" Drogos v. Village of Bensenville, 100 Ill.App.3d 48, 54, 55 Ill.Dec. 902, 426 N.E.2d 1276 (1981), quoting In re Application of County Collector, 59 Ill.App.3d 494, 499, 16 Ill.Dec. 680, 375 N.E.2d 553 (1978). However, "[w]here the facts are undisputed * * * and are susceptible to but a single inference, the question of whether an injury arose out of and in the course of employment becomes a question of law." Kemp v. Industrial Comm'n, 264 Ill. App.3d 1108, 1110, 201 Ill.Dec. 805, 636 N.E.2d 1237 (1994).
Contrary to employer's position, the essential facts of the case are not in dispute. Moreover, for the following reasons, we conclude that the only reasonable inference to be drawn is that decedent was exposed to a stray bullet risk to a greater degree than that to which the general public is exposed. The evidence demonstrates that employer's building was located across the street from a project where rival gangs were feuding for control of a building. There was testimony that gunshots were heard daily and that activity had recently increased in the area. When the gunfire began, decedent's coworker stated to decedent that "they were at it again." Moreover, bullets had previously struck and entered employer's building and had been found inside. The lobby where decedent sat was fronted by floor-to-ceiling windows. Decedent sat 20 feet from these windows. Although he was behind a console and desk, decedent's upper body was exposed. The crime rate in the area south of 35th Street was "very high." The district was tied with another district for the highest number of murders in 1989both had 75 of the total of 742. Thus, out of 25 police districts, two districts had 20.22% of the murders. Further, the second district was the highest district in number of aggravated assaults with a total of 3,646. Finally, it held the second highest numbers for robberies and criminal sexual assaults. While the district north of 35th Street may generally have had less crime (34 murders and 1,146 aggravated assaults), it cannot be ignored that employer's building is directly on the dividing line. There is no magical shield down the center of 35th Street. According to Detective Winstead, the area south of 35th Street was the most dangerous beat in the most dangerous police district of the City of Chicago. Moreover, this already dangerous environment was heightened even more as a result of the gang turf war over Stateway Gardens. Decedent's exposure was not simply a matter of positional risk. Clearly, the risks decedent were exposed to, including being struck by a stray bullet, by virtue of the conditions of his employment are not the same that the general public is commonly exposed to.

*809 CONCLUSION
Based on the foregoing, we find that the Commission had jurisdiction over this cause. We affirm Judge Lanigan's decision on the issues of jurisdiction, misnomer, and relation back. We reverse her decision on the applicable legal standard with regard to risk assessment, with regard to her finding that differing inferences can be drawn from the evidence, and with regard to her finding that the Commission's original decision was not against the manifest weight of the evidence. We affirm Judge Bonaguro's decision in its entirety. Accordingly, we reinstate the Commission's remand decision of June 2, 1998.
Judgment affirmed in part; reversed in part; award reinstated.
McCULLOUGH, P.J., and COLWELL, HOLDRIDGE, and RARICK, JJ., concur.
NOTES
[1] A personal risk may be compensable, however, where conditions of the employment increase the risk of injury. See, e.g., Sears, Roebuck & Co. v. Industrial Comm'n, 78 Ill.2d 231, 35 Ill.Dec. 528, 399 N.E.2d 594 (1979) (fall from fork lift); Rysdon Products Co. v. Industrial Comm'n, 34 Ill.2d 326, 215 N.E.2d 261 (1966) (fall on uneven floor or due to fumes in closed, unventilated room); Siete v. Industrial Comm'n, 24 Ill.2d 368, 181 N.E.2d 156 (1962) (fall near and into blades of machine); Van Watermeullen v. Industrial Comm'n, 343 Ill. 73, 174 N.E. 846 (1931) (fall from seat of loader).